1820.

LIVINGSTON
v.
TOMPKINS.

---

J. R. LIVINGSTON *against* D. D. TOMPKINS.

A Court of Equity does not lend its aid to devest an estate, for the breach of a condition subsequent.

It does not assist the recovery of a penalty or forfeiture, or any thing in the nature of a forfeiture.

It will only interfere to protect the property from waste and destruction, or to prevent its removal out of the jurisdiction of the Court, pending an action at law to recover the possession.

Where the plaintiff having an exclusive right to navigate with *steam*

1820.

LIVINGSTON
v.
TOMPKINS.

boats, the waters of the *bay* of *New-York*, and that part of the *Hudson river*, south of the *state prison*, granted to the defendant the exclusive right of navigating steam boats between *New-York* and the *Quarantine Ground*, on *Staten Island*, &c. ; and it was *provided*, that if the state or legislature of *New-Jersey* should, at any time thereafter, obstruct or prevent the plaintiff from navigating with steam boats, the waters of that state, that, thenceforth, the grant should cease and be void : and on the application of *G.*, a citizen of *New-Jersey*, (against whom the plaintiff obtained an injunction out of this Court, to prevent his navigating the waters in this state, within the limits of the plaintiff's exclusive grant,) the legislature of that state passed an act, declaring, that if any citizen of that state should be restrained, by injunction or order from this Court, from navigating with steam boats, the waters between the ancient shores of *New-Jersey* and *New-York*, the plaintiff, in such injunction, not being an inhabitant of *New-Jersey*, should be answerable to the party aggrieved, in an action of trespass, and by writ of attachment; and that the Court of Chancery might issue an injunction to restrain him from navigating the waters of that state with steam boats : and *G.* accordingly, under that act, obtained an injunction, which was served on the plaintiff, who was thereby prevented from navigating the waters of *New-Jersey* with his steam boat ; on a bill filed by the plaintiff against the defendant, on the ground of the grant to him being, therefore, void : *Held,* that though the *casus fœderis* may have occurred, yet this Court would not interfere to *restrain* the defendant from continuing to exercise his right under the grant to him, until the plaintiff had established the fact *at law,* and his right to resume the grant.

*May 26th* and
*June 1st.*

THE bill stated the different acts of the legislature,. giving and securing to *R. R. Livingston* and *R. Fulton,* the right of navigating the waters of this state, with boats or vessels moved by *steam* or fire, &c. (Vide, *ante,* p. 48. 95. 150. 174.) That *R. R. L.* and *F.*, by deed, dated *August* 20th, 1808, granted to the plaintiff and his assigns, all their right under the laws of this state, " exclusively to navigate from any place in the city of *New-York,* lying to the south of the state prison, to the *Jersey* shore and *Staten Island,* to wit, to *Staten Island, Elizabethtown Point, Perth* and *South Amboy,* and the *Raritan river,*

with steam boats," &c. That the plaintiff, at great expense, caused to be built a boat moved by steam, and to navigate within the limits of the said grant. That on the 8th of *January*, 1817, the plaintiff entered into an agreement with the defendant, and granted to him and his assigns, the exclusive right of navigating steam boats " from the city of *New-York* to the *Quarantine Ground*, and to any other point or place, within one mile's distance, on each side of the *Quarantine Ground*, excepting the place called the distillery wharf," during the residue of the term so granted to *R. R. L.* by the acts of the legislature. That the defendant covenanted that he would not, during the grant, without the previous consent in writing of the plaintiff, either navigate, or permit by grant, or consent that any other navigate, by steam boats, " upon any of the waters of the *Kills* (except within the mile aforesaid) of *Staten Island Sound, Amboy Bay, Middletown Point, or the Raritan River, or to or from any place adjoining such waters, or to or from any part of Staten Island, except that part granted as aforesaid.*" That the defendant agreed to pay to the plaintiff, the sum of five thousand dollars, as a consideration for the grant. That it was further agreed between the plaintiff and defendant, " that in case the state or legislature of *New-Jersey* should, at any time thereafter, obstruct or prevent the plaintiff, or his assigns, in, or from, navigating steam boats within the waters of that state, then, and from thenceforth, the agreement, and every thing therein, to cease and be void." That on the 3d of *May*, 1819, a bill was filed by the plaintiff against *Aaron Ogden* and *Thomas Gibbons*, of *New-Jersey*, complaining of a violation by them of the said exclusive right of the plaintiff, and praying for an injunction to restrain them from so doing. That an injunction was, on that day, granted, restraining *Gibbons* from navigating, with steam boats, the waters in the bay of

1820.

LIVINGSTON
v.
TOMPKINS.

1820.

LIVINGSTON
v
TOMPKINS.

* *Vide,* ante
p. 48. 150.

*New-York,* or in the *Hudson* river, betwen *Staten Island*
and *Powles Hook.** That the injunction was served, and
remained in full force. That the plaintiff had built a steam
boat, called the *Olive Branch,* with which he continued to na-
vigate under the right of the plaintiff, the waters of this state
between the city of *New-York,* and the places mentioned
in the said grant to the plaintiff, and not included in the
agreement with the defendant. That on the 20th of *Fe-
bruary* last, upon the petition of *Thomas Gibbons,* the legis-
lature of *New-Jersey* passed an act, by which it was enact-
ed, that if any citizen of that state should thereafter be en-
joined, or restrained, by any injunction of the Court of
Chancery of *New York,* from navigating with any steam
boat belonging to him, in whole or in part, the waters be-
tween the ancient shores of the states of *New-Jersey* and
*New-York,* the plaintiff, in such writ of injunction, shall be
liable to the person aggrieved for all damages, to be re-
covered, with triple costs, in an action of trespass, &c. or
by a writ of attachment, in case such plaintiff, in any such
order of the Court of Chancery of *New-York,* be a non-
resident of *New-Jersey;* and that it should be lawful for
the Court of Chancery of *New-Jersey,* on a bill by an in-
habitant of that state, to enjoin, by writ of injunction, the
plaintiff in any such writ or order of the Court of Chance-
ry of *New-York,* or any person claiming under him, from
navigating with steam boats the waters within the jurisdic-
tion of that state, and from transporting passengers to and
from *New-York,* or *Staten Island,* to *New-Jersey.*(a)    That

(a) The act is as follows: " *A further supplement to the act, entitled, an act
to preserve and support the jurisdiction of this state.*

" 1. *Be it enacted, by the council and general assembly of this state, and it is
hereby enacted by authority of the same,* That every plaintiff in any proceed-
ing, judgment, or decree, which shall be had, passed, or rendered, in pursu-
ance of any process served or executed within the state of *New-Jersey,* con-
trary to the provisions of the act, entitled, an act to preserve and support
the jurisdiction of this state, passed *December* 3d, 1807, shall be liable to all
damages, expenses, and charges, to be recovered with triple costs, in an

since the passing of that act, *Gibbons*, on the 6th of *May*, filed a bill in the Court of Chancery of *New-Jersey*, against the plaintiff, praying for an injunction, by virtue of the said

action of trespass, or trespass upon the case, to be brought by the parties aggrieved or injured, in the Supreme Court, or any other Court of this state having cognisance thereof; or by writ of attachment, in case the plaintiff in any such proceeding, judgment, or decree, shall not be resident in this state.

" 2. *And be it enacted*, That in case any person or persons shall, under colour of any law of the state of *New-York*, seize, or take into possession, any boat or vessel whatever, moved by steam or fire, belonging, or to belong, in part or in whole, *to a citizen or citizens of New-Jersey*, for being employed or used in navigating *any of the waters between the ancient shores of the states of New-Jersey and New-York*, without a license first had and obtained of the person or persons entitled to, or claiming to be entitled to, an exclusive right or privilege to navigate the waters of the state of *New-York*, (under a law of that state,) with boats or vessels moved by steam or fire, the person or persons so seizing or taking possession of any such boat or vessel as aforesaid, belonging, or to belong, in part or in whole, to a citizen or citizens of the state of *New-Jersey* as aforesaid, shall be liable to the person or persons aggrieved or injured thereby, for all damages, expenses, and charges sustained by occasion thereof, to be recovered with triple costs, in an action of trespass, or trespass upon the case, to be brought in the Supreme Court, or any other Court having cognisance of the same, or by a writ of attachment in case the person or persons making such seizure, or taking possession as aforesaid, under or by virtue of a law of the state of *New-York*, shall not be resident in this state.

" 3. *And be it enacted*, That *if any citizen of the state of New-Jersey shall hereafter be enjoined or restrained by any writ of injunction or order of the Court of Chancery of the state of New-York*, by virtue, or under colour of any act of the legislature of that state, *from navigating* with any boat or vessel moved by steam or fire, belonging, or to belong, in part or in whole, to him, *the waters between the ancient shores of the states of New-Jersey and New-York*, the plaintiff or plaintiffs, in such writ or order, shall be liable to the person or persons aggrieved, for all damages, expenses, and charges occasioned thereby, to be recovered with triple costs, in an action of trespass, or trespass upon the case, in any Court having cognisance thereof, or by a writ of attachment in case the plaintiff or plaintiffs in any such writ or order of the Court of Chancery of the state of *New-York*, shall not be resident in the state of *New-Jersey*.

" 4. *And be it enacted*, That it shall and may be lawful for the Court of Chancery of the state of *New-Jersey*, on a bill of complaint filed by any citizen or inhabitant of this state for that purpose, to enjoin or restrain by a

1820.

LIVINGSTON
v.
TOMPKINS.

act, against the plaintiff, because of the injunction hereto-fore granted by this Court, at the instance of the plaintiff, against *G.*, and because the plaintiff had caused *G.* to be

writ of injunction, the plaintiff or plaintiffs, in any such writ or order of the Court of Chancery of the state of *New-York*, or any person or persons claiming a right derived from or under such plaintiff or plaintiffs to navigate any of the said waters, from navigating with any boat or vessel moved by steam or fire, the waters within the jurisdiction of this state, and from bringing or transporting any passenger or passengers to and from the city of *New-York*, or from *Staten Island*, into the state of *New-Jersey*, whether such transportation be effected directly or circuitously, *or by means of one or more boats of any description*, or by shifting from one boat to another at any intermediate point between the city of *New-York* and *Staten Island*, and the shores of *New-Jersey* : *Provided*, said passenger or passengers shall be conveyed *part of the way from New-York in any boat propelled by steam or fire ;* that then, and in such case, it shall be the duty of the Chancellor to enjoin and restrain *all and every person or persons whatsoever, from aiding or assisting in any such transportation of passengers*, during the continuance in force of any such writ or order of the Court of Chancery of the state of *New-York.*

" 5. *And be it enacted*, That in case the party aggrieved shall proceed by virtue of this act, by writ of attachment, the proceedings shall be in like manner, as near as may be, as is directed by the act, entitled, an act for the relief of creditors against absconding and absent debtors, passed the 8th of *March*, 1798, against an absconding debtor, excepting, that instead of the oath or affirmation required by the said act, the applicant for such writ of attachment shall, before the sealing thereof, make oath or affirmation, which shall be filed in the office of the clerk of the Court out of which the attachment shall be issued, before any judge or justice of the peace in this state, that the person or persons against whose estate the attachment is to be issued, is not, to his knowledge or belief, resident at that time in this state, and of the nature of the injury sustained.

" 6. *And be it enacted*, That it shall and may be lawful for the governor, or person administering the government of this state, to cause to be enforced and effectuated the just rights of the state, according to all the provisions contained in the act, entitled, an act to preserve and support the jurisdiction of this state, passed *December* 3d, 1807, to bring to a determination the jurisdictional rights of the state of *New-Jersey*, in and over all the territories and waters lying between the state of *New-Jersey* and the state of *New-York :* and for the more speedy determination of the same, to cause to be prosecuted or defended any suit or suits which may now, or hereafter shall exist, in which either or both of the questions, as to the rights of this state, may arise : *Provided*, the party in such suit or suits who may be interested in maintaining the rights of the state agree thereto.

restrained from navigating, with steam boats, the waters in the bay of *New-Jersey*, and in *Hudson* river between *Staten Island* and *Powles Hook*. That an injunction was accordingly issued by the Court of Chancery of *New-Jersey*, and served on the plaintiff, injoining him from navigating the waters of that state with steam boats, and from bringing passengers from the city of *New-York*, or *Staten-Island*, to *New-Jersey*. That *G.*, under that act, had caused the steam boat of the plaintiff to be *attached* and detained at *New-Brunswick*, to answer for damages alleged to arise from the injunction so issued by this Court. That the plaintiff, by reason thereof, is prevented from navigating steam-boats within the waters of *New-Jersey*; and that, consequently, by the terms of the agreement between the plaintiff and defendant, the grant to the defendant has ceased and become void. That the defendant, notwithstanding, continues to carry passengers in his steam-boat *Nautilus*, to and from *New-York* and *Staten-Island*, in the same manner as if that agreement remained in full force. That the defendant and *Gibbons* carry passengers in the steam boats *Nautilus* and *Bellona*, to and from *New-York* and *New-Brunswick*, in the following manner: *Gibbons* transports passengers from *New-Brunswick*, through the *Kill* and *Sound* between *New-Jer-*

*1820.*

LIVINGSTON
v.
TOMPKINS.

---

" 7. *And be it enacted*, That it shall and may be lawful for the governor of this state to call to his assistance for advice and consultation in any of the proceedings on this or other acts in force on the subject aforesaid, the attorney general, or a privy council, or both, at the expense of this state, and he or they, or any of them, together with him, are hereby authorized and empowered to do all things concerning the same, which, in their discretion may, by him, or with any of them, be deemed to be to the best interest of this state, to bring to a determination or final adjustment all differences between the two states, by the appointment of commissioners, defending or prosecuting of suit or suits, or otherwise; and any report of commissioners appointed shall become binding on this state and the state of *New-York*, when confirmed by the respective legislatures thereof: *Provided always*, that nothing in this act contained, shall be so construed as to have any operation against any patent right or privilege obtained under the constitution or laws of the *United States*."

1820.

LIVINGSTON
v.
TOMPKINS.

*sey* and *Staten-Island*, to a wharf on *Staten-Island*, below the mouth of the *Kills*, and in the bay of *New-York*, as the plaintiff believes, and there lands them, to be taken on board the *Nautilus*, and carried to *New-York*. That the defendant causes the *Nautilus* to touch at such wharf on *Staten-Island*, below the mouth of the *Kills*, and to take on board such passengers for *New-York*, so that the whole passage, from *N. B.* to *N. Y.* is, by means of this concert and contrivance, completed. That passengers are, in like manner, carried from *N. Y.* to *N. B.* That the wharf or dock below the mouth of the *Kills*, is not the ordinary landing place, where the *Nautilus* lands her passengers, going to and from *Staten-Island*, but is about a mile therefrom, and the defendant causes his boat to go out of her usual and direct route, in order to touch at the said wharf at the mouth of the *Kills*. That the running of the said boats, in this manner, is one continued navigation between *N. B.* and *N. Y.* and is a direct contravention of the exclusive right of the plaintiff, in the same manner as if such navigation was made wholly in one of the said boats; and *G.* does, indirectly, under the cover of the steam boat *Nautilus*, what he cannot do directly with his own boat. That, by the joint operations of the *Nautilus and Bellona*, they are engaged in the very business exclusively belonging to the plaintiff, and the same is a violation of the injunction granted by this Court against *Gibbons*. The plaintiff prayed for an injunction to restrain the defendant from navigating with the *Nautilus*, or any other steam boat, within the limits granted by *R. R. Livingston* and *Fulton*, to the plaintiff, and from transporting passengers between *New-York* and *Staten Island*, or to and from any point south of the state prison, and from shifting passengers, as above stated, with the *Bellona*; and for general relief, and that the defendant may answer under oath to all and singular the premises, &c.

On filing the bill, the Chancellor ordered that *eight* days

notice be given to the defendant of the motion for an injunction.

Notice, accordingly, having been given, *Van Vechten* and *T. Sedgwick*, now moved for an injunction, pursuant to the prayer of the bill.

*Henry*, contra, read the following affidavits and documents : (1.) The *affidavit* of the defendant : (2.) *Articles of agreement* between the executors of *R. Fulton* and the executors and devisees of *R. R. Livingston*, of the one part, and the defendant, *Adam Brown*, since deceased, and *Noah Brown*, of the other part : (3.) The agreement, dated the 8th of *January*, 1817, between the plaintiff and defendant : (4.) *Affidavit* of *Benjamin Simonson* : (5.) *Copy of the act* of the legislature of *New Jersey*, of *February* last : (6.) The grant of *R. R. L.* and *R. F.* to the plaintiff in *August*, 1808 : (7.) The *declaration and plea* in suits at law, commenced in the *Marine Court* in the city of *New-York*, since the passing of the act of the legislature of *New Jersey*, against *John Deforest*, the captain, and *Peter Quinn*, the engineer of the defendant's steam boat *Nautilus*, for maliciously impeding the plaintiff, in the enjoyment of his exclusive right, &c. The defendant, in his affidavit, stated, that no replication had been put in to the plea in those suits, nor any trial had ; and that another suit at law had been commenced by the plaintiff against the defendant in the Supreme Court, to try the same question as arises on the bill subsequently filed in this Court, and that no declaration had been filed in that cause.

*For the plaintiff*, it was contended, that there was no adequate remedy but by an injunction ; for the injury to the plaintiff would be irreparable. The counsel cited 6 *Ves.* 149. 1 *Vern.* 130. 1 *Ves.* 476. 5 *Ves.* 555. *Amb.* 209. 2 *Wooddes.* 417. *note.* 16 *Ves.* 173. 18 *Ves.* 72.

1820.

LIVINGSTON
v.
TOMPKINS.

*May 26th.*

*For the defendant*, it was said, that this was, in effect, a motion for a *forfeiture*, in consequence of an act wholly extrinsic, and over which the defendant had no control. There was no act, agency, or default, to be imputed to the defendant. The question arose under a patent right claimed by the defendant, and those with whom he was associated, over which this Court had no jurisdiction. (9 *Johns. Rep.* 239. 7 *Johns. Rep.* 144.) The *proviso* in the grant from the plaintiff to the defendant, was applicable only to a *total destruction* of the plaintiff's right. It was the act of the plaintiff himself, in procuring the injunction against *Gibbons*, that caused the act of the legislature of *New-Jersey* to be passed, so that the plaintiff seeks to avail himself of a forfeiture produced by his own act. There should be a decree in the Court of Chancery, in *New-Jersey*, before this Court can interfere. If the law of this Court does not work a *forfeiture*, there can be no ground for the motion. Equity never decides on a legal forfeiture. It is for a Court of law, to determine as to the forfeiture, or whether the grant has become void. A Court of Equity neither tries the question of forfeiture, nor enforces it. But equity will, always, relieve against a forfeiture, if compensation can be made. (2 *Johns. Ch. Rep.* 526.) The effect of this motion is to produce a *forfeiture*. If the plaintiff prevails, the defendant will lose his steam boat, and the 5,000 dollars paid to the plaintiff, the amount paid by him to *R. R. L.* and *F.*, and *A.* and *N. Brown*, and the expense of the *Turnpike road, Ferry, Wharves, Hotels,* &c., or the whole establishment at *Staten-Island*, connected with his steam boat. This would be a most enormous injury to the defendant; it would be, in truth, a monstrous forfeiture. Suppose the legislature of *New-Jersey*, should repeal the act to-morrow, could the defendant reassume his grant? No. On the principle contended for by the plaintiff, the defendant's grant is forfeited and gone forever. It would be the highest injustice, to grant an injunction which goes to exact a forfeiture, and to extinguish a right

Besides, all the persons associated with the defendant in his great and expensive establishment on *Staten-Island*, ought to have been made parties; for their interests will be deeply affected, if the injunction is issued. The cases which have been cited are those in which the right was clear, and the mischief irreparable, and where public policy was concerned. This case is directly the reverse. (1 *Vern.* 175. 275.) Suppose an injunction should be awarded, and, afterwards, dissolved, what remedy would the defendant have for the damages which he must suffer, in the mean time? The right of the plaintiff ought to be clear and manifest, either from the record of the judgment of a Court, or from the concession of the defendant. There ought to be a defence, and a final judgment, in the Court of *New-Jersey*, before the plaintiff can apply here. Besides, the act of the Legislature of *New-Jersey*, affects only one of the *remedies* of the plaintiff, not to the *right* itself. The plaintiff is not, and cannot be, prejudiced by the defendant's going to the new *wharf*, which he has purchased of *Lawrence*; for the plaintiff cannot go there.

THE CHANCELLOR. The injunction is moved for on the ground that the grant from the plaintiff to the defendant, has ceased, and become void, and that the defendant is now navigating the steam boat *Nautilus* without license, and in violation of the exclusive right vested in the plaintiff, as assignee of *Livingston* and *Fulton*.

Two questions present themselves upon this motion:

1st. Has the right or privilege heretofore granted to the defendant ceased, in consequence of the matters charged in the bill?

2dly. If so, then is the remedy sought upon this motion proper for the case, as appearing in the bill, and in the affidavits and documents read on the part of the defendant?

1. In the articles of agreement between the parties, there

VOL. IV. 54

1820.

LIVINGSTON
v.
TOMPKINS.

*June 1st.*

was a condition or proviso in these words : " Provided al- ways, and it is hereby declared and agreed, by and between the parties to these presents, that in case the state or legisla- ture of *New-Jersey* shall, at any time hereafter, obstruct or prevent the said *John R. Livingston*, his executors, adminis- trators or assigns, in or from navigating boats or vessels, propelled by the force or agency of steam, within the waters of that state, then and from thenceforth, this agreement, and every thing herein contained, shall cease and be utterly void." The question is, has the plaintiff been obstruct- ed or prevented, within the meaning of this covenant or con- dition ? According to the language used in Lord *Cromwell's* case, (2 *Co.* 70.) this is a condition, by force of the proviso, and a covenant, also, by force of the other words.

The act of the legislature of *New-Jersey* referred to in the bill, (and of which a copy at large is annexed to the defendant's affidavit,) declares, in the 3d section, that if any citizen of *New-Jersey* shall be restrained by injunction or order from this Court, by virtue of, or under colour of, any statute of this state, from navigating with steam boats " the waters between the ancient shores of the states of *New-Jer- sey* and *New-York*," the plaintiff in such injunction not be- ing a resident of *New-Jersey*, shall be answerable in damages to the party aggrieved, by an action of trespass, and by writ of attachment.

This section of the act of *New-Jersey* does not reach the case of the proviso in the agreement, for the plaintiff is not obstructed or prevented by it from navigating the waters of *New-Jersey*. He is only made liable to an action in that state for using a remedy provided by the laws of this state, for a violation of his right; and the same observation applies to the second section.

But the 4th section of the *New-Jersey* act, makes it law- ful for the Court of Chancery of that state, on a bill filed by any inhabitant of it, to restrain *the plaintiff in any such*

*order of this Court*, from navigating, with steam boats, the waters within the jurisdiction of that state.

The plaintiff is brought within the operation of this provision, as appears from the facts charged in the bill.

On the 3d day of *May* last, (as it is stated,) a bill was filed in this Court by the plaintiff, against *Aaron Ogden* and *Thomas Gibbons*, of the state of *New-Jersey*, complaining of a violation of his exclusive right to navigate steam boats on the waters of this state south of the *New-York* state prison, and praying for an injunction to restrain them, and, on the same day, an injunction was granted restraining *Gibbons* from navigating, by steam boats, the waters in the bay of *New-York*, and in *Hudson's* river, between *Staten-Island* and *Powles Hook*, and the injunction was served, and continues in full force. The bill further states, that under the act of *New-Jersey*, *Thomas W. Gibbons* (in pursuance of whose petition the act of the Legislature of *New-Jersey* was passed,) had filed a bill in the Court of Chancery of that state, against the plaintiff, praying for an injunction to restrain him from navigating with any steam boat, the waters within the jurisdiction of that state, because of the injunction heretofore granted by this Court against *Gibbons*, and that an injunction had, accordingly, been granted, in pursuance of the provisions of the said act, and served upon the plaintiff; and his steam boat, called *the Olive Branch*, had, also, been attached and detained at *New-Brunswick*, at the suit of *Gibbons*, under the said act, and for the cause aforesaid.

The deduction in the bill from these facts, is, that the plaintiff has been obstructed and prevented, within the purview of the agreement, from navigating steam boats within the waters of *New-Jersey*, and, consequently, that the case has occurred in which his grant to the defendant has become utterly void.

I am rather inclined to think, that this question is a legal one, and properly cognisable in a Court of law. The affida-

vit of the defendant states, that the plaintiff has already commenced an action in the Supreme Court, to try the question; and I ought not to interfere with it any further than the consideration of it may arise incidentally, in the discussion of the motion for this intermediate and auxiliary process of injunction.

If it appeared clearly, that there was no obstruction within the meaning of the agreement, there would, then, be no pretence for the motion, and I should at once be relieved from the necessity of examining any other point in the case. But I cannot deal so summarily with the subject, for it appears that there is colour, at least, for the conclusion drawn by the bill.

The agreement referred to the existence of a fact, whether such an obstruction did exist, and, probably, without reference to the validity of the statute creating such obstruction, and without reference to any final decision in the Courts of *New-Jersey*, on the provisions of the statute, after the matter had been fairly and fully litigated. The parties seem to have contemplated the possible existence of such an extraordinary act as the one which has been passed, and they made provision for the event, by making the condition of the grant to depend upon the operation of the act, in actually obstructing or preventing the navigation of the plaintiff. The agreement supposed the case of an act to be passed, without the volition or fraud of the plaintiff, and without the default or agency of the defendant; and when the obstruction of the plaintiff exists under the authority of such a statute, and is founded on grounds apparently indefinite as to time, the *casus fœderis* would seem to have occurred.

The act of the plaintiff, in suing out a writ of injunction under the laws of this state, in protection of his exclusive right over certain of its waters, does not, as was suggested by the counsel for the defendant, impair his rights, under the proviso in his agreement with the defendant, notwith-

standing that act is made the ground of the proceeding in *New-Jersey.* What the plaintiff did, was the lawful exercise of a right, and it cannot impair or affect his remedy under the agreement. His rights and remedies in this state were derived from a series of laws giving to *Livingston* and *Fulton*, for a limited time, the exclusive right of navigating steam boats upon the waters of this state. It is well known, that this navigation, so auspiciously commenced under the patronage of the legislature, on the waters of the *Hudson*, in 1807, has since rapidly extended itself over all the principal waters of the *United States*, and imparted honour and happiness to our common country. These state laws, upon which the plaintiff's rights were founded, were passed with liberal and patriotic views, and without the smallest intention or apprehension of violating the private rights of any individual, or the public rights of any community. They had nothing to do with the question of territorial boundary between this state and *New-Jersey.* The exclusive privilege was expressly limited to " the waters of this state, or within the jurisdiction thereof;" and when this Court was called on to protect that privilege, by injunction, according to the directions of those laws, it was bound to regard, *as waters within the jurisdiction of this state,* " the whole of the river *Hudson,* southward of the northern boundary of the city of *New-York,* and the whole of the bay between *Staten Island* and *Long Island ;"* because, the Legislature had declared those waters to be within its jurisdiction, and that such jurisdiction had been " hitherto actually and constantly exercised or possessed" by this state, and that it was to be " preserved, maintained, and defended by all lawful ways and means, until this state shall be evicted thereof by due course of law."

· If the jurisdiction of this state over the waters of *Hudson* river, and of *York Bay*, be not well asserted, the error is in the Legislature, and not in the plaintiff, nor in the Courts of justice. And as this state is in the actual and constant exer-

1820.

LIVINGSTON
v.
TOMPKINS.

cise of exclusive jurisdiction, there is a remedy for the trespass or the usurpation, (if it be one,) which is obvious, effectual, specific, and just. The Supreme Court of the *United States* has original jurisdiction in all controversies between two or more states ; and this state, as she intimates in her statute, is ready to abandon her jurisdiction over those waters, whenever she shall be evicted by due course of law.

I cannot but be of opinion, that this constitutional mode of redress, through the organ of the Supreme Court of the *United States*, would have been quite as wise and equitable, as the punishment of an innocent individual, for having protected his right under the laws of his own state, by means of the Courts of justice of his own state ; or as the restraining of " all and every person," from aiding in the transportation of passengers into *New-Jersey*, in boats " of any description," provided such passengers have been conveyed " part of the way" by means of the steam boat of such individual.

Citizens of each state, are entitled to free ingress and regress to and from any other state, and to all the immunities of citizens in every state.

I had, hitherto, understood and believed, that the citizens of each state were entitled, under the constitution of the nation, to free ingress and regress to and from any other state, and were entitled to all immunities of citizens in every state ; that the government of the *United States* had sole and exclusive jurisdiction over all disputes and differences between two or more states, concerning boundary, jurisdiction, or other cause ; and that the law of reprisals permitted, in extreme cases, by the law of nations, between independent states, was in this country, and under our union, as between the several states, entirely unnecessary, as well as absolutely unlawful.

The Supreme Court of the United States having sole and exclusive jurisdiction over all differences between states, all acts of reprisal between the states, are unnecessary and unlawful.

These observations have been made to meet the objection of the defendant's counsel, that the act of the plaintiff was the procuring cause of the law of *New-Jersey*, and that he was now seeking to avail himself of the consequences of his own act. I shall, certainly, not visit that law upon him, nor permit it to impair, in the smallest degree, the remedies he may be entitled to in this Court. Nor is the constitutionality of

the act of *New-Jersey*, a proper subject of discussion here. That question belongs, in the first instance, to the Courts of that state, and ultimately to the Supreme Court of the *United States ;* and I entertain a confidence that the question, if ever raised, will be temperately discussed, and justly decided, in each of those jurisdictions.

2. But even if we were to assume that the defendant's privilege has ceased, by reason of the act of *New-Jersey*, the next question is, whether this Court ought to interfere and restrain the defendant from the further exercise of the privilege of which he is still in the enjoyment, until the right of the plaintiff, to resume his grant, has been established at law.

It appears to be contrary to the uniform course of the Court, and to its established principles, to *aid* in the devesting of an estate, for breach of a condition subsequent. The cases are full of discussions how far this Court can *relieve* against subsequent conditions; and the general rule formerly was, that if the Court could make compensation to the party in damages, for non-performance of the condition, it would then relieve. (*Popham* v. *Bampfield*, 1 *Vern.* 79.) That relief seems now to be confined to cases where the forfeiture has been the effect of accident, and the injury is capable of compensation. (*Rolfe* v. *Harris*, 2 *Price Exch. Rep.* 207. note. *Bracebridge* v. *Buckley*, 2 *Price*, 200.) It may be laid down as a fundamental doctrine of the Court, that equity does not *assist* the recovery of a penalty or forfeiture, *or any thing in the nature of a forfeiture.* In the present case, there is no act done, or omitted to be done, by the defendant, which occasions the loss of his privilege. By the act and agreement of the parties, it has been made to depend upon an event, over which the defendant had no control. But the event, perhaps, equally occasions the loss of the right, as if it had been expressly forfeited by the act of the party. It is in the nature of a forfeiture, and produces the same penal result;

*This Court does not lend its aid to devest an estate, for the breach of a condition subsequent.*

*It does not assist the recovery of a penalty or forfeiture, or any thing in the nature of one.*

1820.

LIVINGSTON
v.
TOMPKINS.

and so far from aiding the plaintiff to devest the defendant of his privilege, this Court could only interfere to protect the property from waste, destruction, or removal out of the jurisdiction of the Court, pending the action at law to recover possession. There is no sort of analogy between this case and that of *Livingston* v. *Van Ingen*, decided on appeal, in 1812. (*9 Johns. Rep.* 507.) The appellant, in that case, was, and had been, for some years, in possession of the statute privilege, and the opposition boats were a trespass upon his right, without colour of title. In the present instance, the defendant has been, for some years, in the lawful possession under his grant; and to suspend the exercise of that right, (*and which would be equivalent to an ouster of possession,*) before the question of failure of his grant, upon a condition subsequent, has been legally tried, would be as severe as it would be unprecedented.

A defendant is not bound to answer, so as to subject himself to a penalty or forfeiture.

There are numerous cases establishing the rule that no one is bound to answer so as to subject himself, either directly or eventually, to a forfeiture or penalty, or any thing in the nature of a forfeiture or penalty. (*Smith* v. *Read*, 1 *Atk*. 526. *Harrison* v. *Southcote*, 1 *Atk*. 528. *Bird* v. *Hardwicke*, 1 *Vern*. 110. *Sharp* v. *Carter*, 3 *P. Wms.* 375. *Wrottesley* v. *Bendish*, 3 *P. Wms.* 236. *Chancey* v. *Fenhoulet*, 2 *Ves.* 265. *Boteler* v. *Allington*, 3 *Atk*. 453. *Monnins* v. *Monnins*, 2 *Ch. Rep.* 36. *Chauncey* v. *Tahourden*, 2 *Atk*. 392. *Fane* v. *Atlee*, 1 *Eq. Cas. Abr.* 77. pl. 15. *Lord Uxbridge* v. *Staveland*, 1 *Ves.* 56.) It is said, that there is a difference between a determination of the estate by the party himself, and by statute; but in several of the cases the determination was to arise from the act of the party, as, for instance, a re-marriage, and yet a demurrer to the bill was allowed. So, it has been said, that there was a difference between a limitation over of the estate, on a certain event, and a condition working a forfeiture; but the distinction does not seem to be supported. The great prin-

ple is, that equity " will not assist in the recovery of a pe-
nalty or forfeiture, when the plaintiff may proceed at law to
recover it." It will only stay a party from making waste,
until it be seen whether he has any right to do so. This
was said by Lord Ch. B. *Comyns*, in *Jones* v *Meredith ;*
(2 *Com. Rep.* 671.) and the rule has been again and again
repeated, and is the common language of the books, that in
no case, (unless under extraordinary circumstances,) will a
forfeiture, or the devesting of an estate, be assisted in a Court
of Equity. (3 *P. Wms.* 236. 1 *Vern.* 60. 1 *Eq. Cas.
Abr.* p. 131. pl. 9. p. 77. pl. 16.)

The Court has sometimes restrained a party from the
exercise of a right, in a particular manner, and contrary to
an express covenant; but this was held to be in the nature
of a specific performance, and was consistent with the ordi-
nary and legitimate enjoyment of the subject. This was
the case in *Barret* v. *Blagrave ;* (5 *Ves.* 555.   6 *Ves.* 104.)
but in none of the cases which I have looked into, do I find
any assistance lent to a plaintiff to enable him to recover
at law, property alleged to be devested upon the breach of
a condition subsequent. I am persuaded there is no such
case, and especially, if the condition be several in its nature,
and partaking of the spirit and character, if it does not of
the name of a penalty or forfeiture. In this case, consider-
ing the great and expensive establishments connected with
the enjoyment of the defendant's privilege, an immediate
restraint upon its enjoyment would be attended with very
injurious consequences; and, I think, there was much dis-
cretion and good sense in the observation of the Lord
Keeper, in *Hills* v. *University of Oxford,* (1 *Vern.* 275.)
when he denied a similar motion for an injunction. He
said, that " if the right should be found for the defendants,
they would receive a prejudice by the injunction which he
could not compensate."

Motion denied.