## ARGUED AND DETERMINED

IN THE

# COURT OF COMMON PLEAS,

FOR THE

## CITY AND COUNTY OF NEW YORK.

———————◆———————

## CHARLES ABERNETHY *v.* THE SOCIETY OF THE CHURCH OF THE PURITANS.

By the terms of a deed to the plaintiff of a pew in the defendant's church edifice, it was conditioned, among other things, that the grantee should pay annually a sum equal to ten per cent. of the original appraised value of the pew (amounting to $80), and whatever else should be further assessed thereon, and provision was made for a forfeiture and sale of the pew in case of non-payment of such assessments. The defendant laid assessments on each pew, for the years 1861 and 1862, of a sum equal to fifteen per cent. of their original appraised value, for each year. The plaintiff refused to pay the assessments on his pew, and brought suit to restrain defendant from selling the pew for non-payment.

*Held,* That in laying an assessment of fifteen per cent., instead of ten per cent., the defendants violated no contract with the plaintiff, and a court of equity will not on that ground interfere to restrain a forfeiture and sale of the pew.

*Held further,* That the plaintiff, in asking a court of equity to interfere by injunction in such a case, should show either payment or offer of payment of so much of the assessment admitted by him to be duly laid.

*It seems,* however, that, even in case of payment or offer of payment, the court will not interfere, because the forfeiture and sale threatened by the defendant, if unlawful, could not divest the plaintiff of his property in the pew.

A pew owner or holder has no legal interest in the church edifice, or in the land upon which it stands, or in the proceeds of the sale thereof. All that he has or can acquire is the right to occupy the pew during divine service, which is a

qualified interest, and one necessarily limited in point of time, for if the building is destroyed or taken down, the right is gone.

Hence it is no ground for an injunction against the sale of a pew by the trustees for non-payment of assessments, that the plaintiff will by such sale be deprived of his proportion of the proceeds of the sale of the church edifice at the expiration of the lease of the land upon which it stands.

Forfeitures are not favored in equity, and where the meaning is doubtful, or it requires a strained or very technical construction of language to make out a forfeiture, it will not, in equity, be inferred that a forfeiture was intended.

An appellate tribunal will not reverse a decree upon a point which was not raised or considered in the court below, unless there was a total want of jurisdiction in the court to grant the relief sought, or to give the judgment.

The books and minutes of a corporation are, as a general rule, evidence of the acts and proceedings of the corporate body, and if there is nothing to render them suspicious, they may be referred to, in order to show the regularity and legality of its proceedings.

Before the Code a motion for nonsuit brought up the question whether the proof was sufficient to support the declaration, and if the plaintiff proved his case as laid, the motion would be denied, because the sufficiency of the declaration could be tested only by demurrer, or by a motion in arrest of judgment. But since the Code, the defendant does not waive the objection that the complaint does not state facts sufficient to constitute a cause of action by omitting to raise it by answer or by a demurrer. He may take the objection at the trial by a motion for nonsuit; but omitting to take it there, he cannot raise it upon appeal.

THIS was an action brought to restrain the defendant from selling the plaintiff's pew in its church edifice, pursuant to a notice received by him that the same would be sold or forfeited for non-payment of taxes thereon. The plaintiff held the pew under a deed from the corporation upon condition that he should "pay the annual sum of ten per cent. on the original appraisement of said pew, and whatever else shall be further assessed thereon, and if he should neglect to pay, and by such neglect cause an arrearage of one year, the same should be demanded by the treasurer for the time being; and in case of refusal on such demand, or neglect of payment three months after such demand, it should be lawful for the trustees to sell the same to the highest bidder. And a bill, signed by the treasurer specifying the arrearage, and requiring payment, being left in said pew, shall be considered a demand for the purposes above expressed."

The original appraisement of plaintiff's pew was $800, and the original appraisement of all the pews in the church was $79,550. The amount of money which the society voted to raise during the year ending May 1, 1861, was $7,000, and during the year ending May 1, 1862, was $6,000, and the assessment made upon the plaintiff's pew during each of those years, for the non-payment of which forfeiture was claimed, was 15 per cent. upon the original appraisement value thereof, to wit: $120, each year. The plaintiff had not occupied the pew, or paid the rent or taxes thereon, for about two years before he brought this action. It also appeared that a resolution of the Board of Trustees had remitted all forfeitures on pews, where the owners had given a written consent to the trustees to rent the pews, but the resolution at a meeting of the society was declared to be unauthorized, and, besides, the plaintiff had never given the society the notice contemplated by the resolution.

The cause was tried before CARDOZO, J., without a jury, and judgment rendered for the plaintiff, declaring him the owner of the pew, and restraining the defendant from selling it pursuant to the notice, or for any cause therein alleged.

From this judgment the defendant appealed to the General Term of the court.

*Edward Gilbert*, for appellant.

*Phelps & Knevals*, for respondent.

By THE COURT.—DALY, F. J.—The Society had voted the sum of $7,000 in the year 1860, to defray its annual expenses, and the sum of $6,000, for that purpose, in 1861, which was to be raised by an assessment upon the pew owners, at the original valuation of their pews. The original valuation of all the pews in the church, was $79,550, and that of the plaintiff's pew was $800. An assessment of ten per cent. upon this valuation would have sufficed to raise either of the sums voted in the year 1860 or 1861, provided the assessments upon all the pews were duly paid. It may be, however, that, to provide against the contingency of a non-payment of all the assessments,

an assessment of more than ten per cent. was necessary, so as to secure, beyond all contingencies, the sum requisite, and which had been voted, for the annual support of the church, and it is not for this court to say that the trustees erred, much less that they acted improperly or illegally, in fixing the rate of the assessment at fifteen per cent. By so doing they violated no contract which the plaintiff had entered into with the corporation as a pew owner. By the written instrument, the plaintiff and his heirs, were to hold and enjoy the pew upon certain conditions; one of which was the payment of an annual sum of $80, being ten per cent. upon the original appraisement, and *whatever else should be further assessed upon the pew for the support of* public worship in the church, and towards such charges as, from time to time, might be voted to be defrayed; and this was but a *further* assessment of five per cent. beyond the annual sum of $80, or ten per cent. upon the original appraisement, and as such, was strictly within the terms of this condition. It further appeared that an assessment of fifteen per cent. had been made on the pew in the church, previous to 1860; that the plaintiff paid it without protest or complaint, and did so, as he testified, because he went to the meeting to help to raise the money; to which he added, "but it was not a legal assessment;" without, however, showing or stating, in what respect it was illegal, and it further appeared that, at the annual meeting of the Society in 1861, a resolution was adopted recommending an assessment of fifteen per cent. upon the valuation of the pews, to meet the appropriation then made. An assessment of fifteen per cent. might yield more than the sum which the Society voted to raise annually for its support; but if it did, it may not have operated to the injury or loss of the pew owners, as in that event, a less amount for the support of the Society would be necessary the following year, and such appears to have been the fact, for $7,000 was voted for that purpose, by the Society, in 1860, and but $6,000 in 1861, though in that year, despite the diminished sum, the Society, at its annual meeting, as I have stated, recommended that the same assessment should be made of fifteen per cent.

The records of the Society, and of the Board of Trustees, from 1855 to 1861, were offered in evidence, to show, among other things, why the increased assessment of fifteen per cent. was made, but was excluded by the court, upon the plaintiff's objecting. As a general rule, the books and minutes of a corporation are evidence of the acts and proceedings of the corporate body, and if there is nothing to render them suspicious, they may be referred to, in order to show the regularity and legality of its proceedings (Angell & Ames on Corporations, § 679). In this case, they were offered not only for the purpose above stated, but to show the rules of the Society, and as between the corporation and one of its members, assuming the plaintiff, at the time, to have been a member, I cannot see why they were not admissible to show its rules, and that the assessment was, as averred in the answer, a proper one, duly made, directed by the votes of the Society, in the regular manner, and for the proper amount (1 Greenleaf's Evidence, § 493). But this point is not one that it is material to consider, as it is not essential that we should put our decision upon this ground.

Another view may be taken of this case. If, as the plaintiff claims, an assessment of fifteen per cent. was unreasonable or improper, he was at least bound to pay, to the extent of ten per cent. upon the valuation of his pew, but, during two years, he has neither paid nor offered to pay anything. He insists upon maintaining his right of ownership in the pew during this period, though contributing nothing to the support of the Society. Where a court of equity interposes its aid to relieve against a forfeiture, it does so only upon the payment of the amount due, together with the interest (Story's Equity Jurisp. § 314), and it consequently follows that when a party comes into a court of equity to ask it to enjoin another party from doing any act towards the enforcement of a forfeiture for the non-payment of money, it should appear that he has paid, or offered to pay, to the other party, what that party is justly or equitably entitled to. It is a familiar maxim that he who seeks equity must do equity, and before the plaintiff could have the aid of this court to enjoin the defendants from selling his pew as forfeited, he would have to offer to pay the defendants, according to his own

view of the extent of his obligation, an amount equal at least to ten per cent. upon the valuation of the pew, as his proportionate part of the sums to be raised. From all that appears in the complaint or in the evidence, he has neither paid nor offered to pay anything, and asks this court to maintain him in that position by restraining the defendants from doing any act that may interfere with, impair or take away, his right of property in the pew. Even if he made this offer, and the defendants had refused to accept it, I doubt if his case would be one in which the interference of a court of equity would be necessary, for the defendants could not divest him of his property in the pew if they had no lawful right to sell it, and in such cases a court of equity does not interfere (*Jerome* v. *Ross*, 7 Johns. Ch. 315; *Storm* v. *Mann*, 4 Id. 21; *Overseers, &c.* v. *Hart*, 3 Leigh's R. 1; *Osborn* v. *The Bank of the United States*, 9 Wheat. R. 739; *Outcalt* v. *Disborough*, 2 Green's Ch. 214). But this point is one which it is not necessary to pass upon. It is sufficient to say that, in the aspect in which the plaintiff presents himself, neither having paid nor offered to pay anything, he could not have the equitable aid of this court.

The resolution of the board of trustees, providing for the remission of forfeitures upon pews, was, by its terms, limited to cases where the owners had given or should give a written consent to the society to rent the pews and receive the rent for the use of the society. It was shown by the plaintiff's testimony that he never gave any consent in writing authorizing the trustees to rent his pew in pursuance of this resolution, and, in addition, that the resolution was disapproved of at a meeting of the society, and declared by the vote of a large majority to be unauthorized. This evidence was a complete answer to this alleged ground of action.

It is insisted, as a further cause of action in the complaint, that the lease of the ground upon which the church edifice stands will expire in five years; that the plaintiff will be entitled, at the sale of the church edifice, at the expiration of the lease, to his proportionate share of the proceeds, of which he will be deprived by a sale now of his rights and privileges in his pew. The plaintiff's claim that he would be entitled to a proportion-

ate part of the proceeds of the sale of the church edifice, upon the ground of being a pew owner at the time of the sale and at the expiration of the lease, is wholly without foundation (*Fassett* v. *The First Parish in Boylston*, 19 Pick. 361; *Voorhes* v. *The Presbyterian Church of Amsterdam*, 8 Barb. 135; *matter of the Reformed Dutch Church in Saugerties*, 16 Id. 237; *Freligh* v. *Platt*, 5 Cow. 494; *Heeney* v. *St. Peter's Church*, 2 Edw. Ch. 608). A pew holder, or owner, has no legal interest in the church edifice, or in the land upon which it stands. The title to it and the right in the land, whatever that right may be, is in the corporation, and the possession is in the trustees. All that the pew owner has, or can acquire, is the right to occupy the pew during divine worship, which is a qualified interest and one necessarily limited in point of time; for if the building is taken down, or is destroyed by fire, or the pew is destroyed by a necessary alteration in the internal arrangement of the church, the right is gone. This is the extent of the plaintiff's rights and privileges under the conveyance made to him by the defendants, as a pew owner, and if the church edifice should be sold at the expiration of the lease, the whole interest which he had as a pew owner would be at an end; the proceeds of the sale would belong to the whole society in its corporate capacity, and might be applied by it towards the erection of another edifice, or to any use and purpose within the range of its corporate powers.

It was one of the conditions of the instrument executed by the defendants to the plaintiff, that he should, upon withdrawing from the church, offer the pew to the standing committee of the board of trustees at the sum originally paid for it, and that if the committee should, after the space of thirty days, neglect or refuse to pay for it, after deducting all arrears that might be due, then he might, after having paid up all arrears, sell it subject to the same conditions upon which he held it, and that a non-compliance with the condition should operate as a forfeiture of the pew to the society. The offer of it at the original price to the committee was a condition precedent to the sale of it, and, as forfeitures are always to be strictly construed, I doubt if the conditions extended beyond it. The plaintiff ad-

mits in his complaint that he had not occupied the pew for two years, and he testified at the trial that he had ceased to be an attendant upon the regular services of the society in the fall of 1860 or in the spring of 1861, which was about, or very nearly, two years. He was asked the following question: "Did you, *at the time you left,* offer the trustees, or the standing committee on the subject, your pew, at the original price, or at any price?" The question was objected to; the objection was sustained, and the defendants excepted. This question necessarily assumed that when he ceased to attend upon the regular services of the society—that is, in the fall of 1860 or in the spring of 1861—he withdrew, within the meaning of this condition, from the church, and that not having, at, or about that time, as required, offered the pew to the standing committee, there was a non-compliance with the condition, and consequently a forfeiture of the pew to the society. I think the court was not called upon to go this length. Forfeitures are not favored in equity. A court of equity never lends its assistance to aid in their recovery (*Livingston* v. *Tompkins,* 4 Johns. Ch. 431). And where the meaning is doubtful, or it requires a strained or very technical construction of the language to make out a forfeiture, it will not, at least, in equity, be inferred that a forfeiture was intended. It does not necessarily follow, because a man's pew is unoccupied for two years, and he has not, during that time, attended the regular services of the congregation, that he has withdrawn from all communion with the church; but where there is an unequivocal act, such as the transfer, or the attempt to transfer, all his right or privilege in his pew to another, then there is such a withdrawing as will, within the meaning of the condition, work a forfeiture. Beyond this there is no occasion to go, as it is provided in a previous condition, that if the assessments remain unpaid for a year, the trustees may sell the pew in three months after the amount due has been demanded, deducting from the proceeds of the sale what is due, and paying the remainder to the plaintiff. To this it may be said, in addition, that in equity, no man is bound to answer, if his answer would subject him to a penalty or a forfeiture, or to anything in the nature of a forfeiture, either affecting his person or

his property (Gresley's Equity Evidence, 83, 84; *Livingston* v. *Tompkins*, 4 Johns. Ch. 415; *Attorney-General* v. *Lucas*, 2 Hare's R. 566; *Henry* v. *The Salina Bank*, 1 N. Y. 83; *Uxridge* v. *Staveland*, 1 Ves. Sr. 55; *Smith* v. *Reed*, 1 Atk. 526). There was no error, therefore, on the part of the court, in excluding this question.

It is objected by the respondent that the points now relied upon by the defendant to show that the action could not be sustained were not raised or passed upon in the court below. If they were not, they are not available now upon appeal; for it is a familiar and long-established rule, applied alike in courts of law and equity, that the appellate tribunal will not reverse a decision upon a point which was never raised or considered in the court below, unless there was a total want of jurisdiction in the court to grant the relief sought or to give the judgment; for it was said by Chancellor KENT, in *Gelston* v. *Hoyt* (13 Johns. 577), the court below cannot be said to have committed an error when their judgment was never called into exercise, and the point of law was never taken into consideration. But in the present case, we do not know from anything which is before us, whether the points relied upon, were raised upon the trial or not. It appears from the printed case, that when the plaintiff's testimony was closed, the defendant moved for a dismissal of the complaint; that the motion was denied, and that the defendant excepted; but the grounds upon which the motion was made, if any were stated, do not appear. It is usual upon making such a motion, to lay before the court the grounds upon which it is founded. It is the right of the court to know, and it is the duty of the party who moves, if required, to state them, and where he states his grounds, he will not be entitled afterwards to have the judgment reversed, because the motion ought to have been granted upon another ground not specified or brought to the attention of the court (*Belknap* v. *Scaley*, 14 N. Y. 143; *Crook* v. *Mali*, 11 Barb. 206, 211). Before the Code, a motion for a nonsuit brought up the question, whether the proof was sufficient to support the declaration; and if the plaintiff proved his case as laid, the motion would be denied, for the sufficiency of the declaration could be

tested only by a demurrer or by a motion in arrest of judgment (*Safford* v. *Stevens*, 2 Wend. 163 ; *Kelly* v. *Kelly*, 3 Barb. 419 ; *Van Vechten* v. *Graves*, 4 Johns. 403 ; *Myer* v. *McLean*, 1 *id.* 509). The Code has changed the law in this respect by declaring that the defendant does not waive the objection that the complaint does not state facts sufficient to constitute a cause of action, by omitting to raise it by his answer or by a demurrer. He may take that objection at the trial, but if he omits to take it there, he cannot afterwards raise it upon appeal, for the Code has not gone the length of declaring that he does not waive it by omitting to raise it upon the trial, and has not therefore changed the rule before referred to, that a decision will not be reversed for error, upon a point not raised or considered in the subordinate tribunal. For all that appears before us, this point may have been embraced in the motion for a nonsuit, and it necessarily would be, if the court, without requiring the defendants to state the grounds upon which they moved, disposed of the whole case as it then stood before it, as matter of law. It is sufficient, therefore, for us to say, that as the case stood upon the evidence and the pleadings when the motion was made to dismiss the complaint, the action was not maintainable, as there was nothing in the evidence to show that an assessment of fifteen per cent. was unlawful, improper, or irregular, or that the plaintiff had paid or offered to pay any amount as his proportional part of the sum to be raised. He had shown nothing which could give him any standing in a court of equity, and the utter want of foundation for the action was completely established by the evidence given on the part of the defendants, and was available as an answer to the whole case under the exceptions taken by them to the findings and decision of the judge. The judgment should be reversed and a new trial ordered.

Judgment reversed.