## HONG KIM *v.* M. KAHILO HAPAI.

### APPEAL FROM CIRCUIT JUDGE, FOURTH CIRCUIT.

FREAR, C.J., PERRY, J., AND J. T. DE BOLT, ESQ., OF THE BAR, IN PLACE OF GALBRAITH, J., DISQUALIFIED.

SUBMITTED DECEMBER 28, 1900. DECIDED MARCH 15, 1901.

Cancellation of a lease on the ground that it was obtained by misrepresentation will not be decreed where the alleged false representation as understood by the party making it and as by him intended to be understood by the other party, was in fact true, and where the party complaining, if he did not in fact so understand it, placed a construction upon the representation that was not justified by the language used, under all the circumstances of the case.

Equity will not enforce a forfeiture of the estate created by a lease for breach of one of the covenants therein.

The attorneys' fees set forth in Section 1492 of the Civil Laws of 1897, cannot be correctly taxed in an equity suit.

#### OPINION OF THE COURT BY PERRY, J.

These are proceedings in equity instituted by complainant by a bill wherein he alleges that on or about the fifteenth day of December, 1897, he leased from the respondent for a term of twenty years certain land situate in Puueo, district of South Hilo, Hawaii; "that prior to the execution of said indenture of lease, the lessor therein, defendant herein, represented to this plaintiff that said land was bounded on the mauka side by Bridge Street in said Puueo, as in said lease set forth; that said plaintiff was induced by said representation to enter into said lease; that said representation that said land fronted on or was bounded by Bridge Street was false and untrue; that plaintiff

then caused to be erected on said land a building upon which plaintiff has expended the sum of $1400.; that plaintiff has paid to the defendant all the rent reserved in said lease; that by reason of said land having no frontatge on Bridge Street, in Puueo, as was falsely represented by defendant to plaintiff, the said leased land and the buildings thereon have become and now are of no value and are entirely without use or profit to this plaintiff." The prayer is for cancellation of the lease and for damages.

Respondent in her answer denied generally all of the averments of the bill, alleged that complainant had caused a forfeiture of the lease by reason of a breach of the covenant therein contained that he would not "do anything bad for the peace of the public" on the demised premises, and prayed that the lease be declared forfeited.

Upon the issues of fact thus raised by the pleadings, trial was had. The conclusion of the Circuit Judge was that the complainant had failed to sustain the averments of his bill, and that respondent's averments were fully borne out by the evidence, and "rescission" of the lease was decreed. From this decree the complainant appealed.

The land demised is described, in part, in the lease as follows: "Beginning at the north-east corner of Bridge and Amaulu streets, and run north along the makai side of Bridge street fifty (50) feet, that is the width on the mauka frontage." Upon an appeal in an action at law for damages between these same parties, we held, on demurrer, (see 12 Haw. 185) that no covenant that a public street existed along and over the land described as "Bridge Street" could be implied from the description of the demised premises in the lease. The declaration was held not to sufficiently set forth either a cause of action of tort for false representations made before the execution of the lease or a cause of action for breach of covenant.

The bill now before us is for a rescission of the lease on the ground that it was accepted by the lessee in consequence of misrepresentation on the part of the lessor prior to its execution, and

the main issues involved are to be determined in accordance with the facts disclosed by the evidence.

The facts are that on February 17, 1897, the respondent conveyed to one C. S. Desky the strip of land, 50.4 feet wide, adjoining on one side the piece leased later to complainant, and a part of what is referred to in the lease as Bridge Street. The deed is absolute and without conditions as to the building of a road or otherwise, but the grantor understood and believed at the time that the land was wanted for road purposes and that it would be wholly used as a road. During the course of the negotiations for the lease she pointed out to complainant the boundaries of the land proposed to be leased and said to him that the strip in question was "the road," that she had sold it to Desky "for government road," that the land to be leased "ran clear to the street" and that there was a "sidewalk and road" right next to the front line of the lot; and "told him to build his house by that post on the road." The respondent believed from the statements of the complainant that the strip indicated was a public road, and in that belief executed the lease.

Upon obtaining possession, the lessee erected, at a cost of $1400., a building to be used as a store and dwelling on the supposed line of the street as pointed out by the lessor. Some time thereafter one Scott, to whom Desky had conveyed the fifty-foot piece of land, erected a board fence a few inches distant from the front line of the lot, running the whole length of the building and reaching in height to the floor of the second story, rendering the building practically useless for the purposes for which it was intended. It appears that Scott constructed a road forty feet wide running through the fifty-foot piece and reserving a strip five feet in width on each side of said road between it and the adjoining pieces of property,—this for the purpose of retaining some control over the uses to which property fronting on said five-foot strips should be put. The forty-foot strip, though constructed and used as a road, has not been accepted by the government as a public highway.

Those above recited are the only statements shown by the

evidence to have been made by Mrs. Hapai relative to the existence of a road at the place referred to. The strongest of them, from the point of view of the complainant, was, "I have sold that strip to Desky for a government road." In the sense in which we believe Mrs. Hapai to have made it, to wit, that she had sold the land believing that Desky wanted it for a road and would use it as such, the representation was true. It would not be a true statement had she meant by it and intended to convey the impression that she had so deeded it that Desky was *bound* to dedicate it to the public as a road or to suffer it to be perpetually used as such; but nothing of the sort was in her mind. It is at least doubtful if any thought of such a covenant on Desky's part or of such dedication entered the complainant's mind at the time; but if he did believe from her statements that the perpetual use of that strip of land as a public road had been secured and relied upon the statement as thus understood, we are of the opinion that such belief and reliance on his part were not required or justified by what she said. He had express notice from her that the strip in question did not belong to her at the time of these interviews and that the title was in another, to wit, in C. S. Desky. Complainant made no attempt to ascertain, either from her or from any other source, what the terms of her deed were or what reason, if any, there was for believing that Desky would in fact keep the strip open as a public road. Both parties acted in good faith; both understood that the strip would be used as a road; and both took their chances on the probability of its being so used. Under all of the circumstances shown by the evidence, we are of the opinion that the complainant is not entitled to the relief prayed for.

The court below, as already stated, granted respondent's prayer for "rescission" of the lease on the ground that complainant had committed a breach of the covenant that he would not "do anything bad for the peace of the public." What the court evidently intended was to declare a forfeiture of the estate created by the lease. The decree in this particular was erroneous. Equity will not lend its aid to enforce a forfeiture. This is well established. See Bispham's Principles of Equity, Sec. 181; 4

Kent Com. 130; 2 Story Eq. Jur., Sec. 1319; *Smith v. Jewett,* 40 N. H. 534; *Livingston v. Tonkins,* 4 Johns. Ch. 415; and *Beecher v. Beecher,* 43 Conn. 561.

The trial judge ordered statutory attorneys' fees to be paid by the complainant. If by this was meant the attorneys' fees set forth in Section 1492 of the Civil Laws of 1897, the order was erroneous. No such costs can be taxed in an equity suit. See *Willard, Assignee, v. Vincent,* 13 Haw.—

The case is remanded to the Circuit Judge of the Fourth Circuit for the entry of such a decree and for such further proceedings as may be necessary in conformity with the foregoing opinion.

*L. A. Dickey* for complainant.

*P. Neumann, T. C. Ridgway* and *C. M. Le Blonde* for respondent.