HEENEY v. THE TRUSTEES OF ST. PETER'S CHURCH, et al.

---

An injunction obtained by a pew holder, to restrain trustees of a church from pulling it down, dissolved: it appearing that the encrease of the congregation and the dilapidated state of the old edifice made it proper.

---

Bill for an injunction to restrain the trustees of St. Peter's Church in the city of New York and others "from pulling down or prostrating the building called St. Peter's Church in Barclay Street in the city of New York or any part thereof; and from committing any further waste or destruction of the same and to desist and refrain from all proceedings to build a new church on the said premises."

The main part of the church was erected between the years one thousand seven hundred and eighty and one thousand seven hundred and eighty-nine and the sacristy or ves-

try and the portico in front, with the galleries and pews, were erected in or shortly after the year one thousand seven hundred and ninety-two. The expense of these erections was defrayed by voluntary contribution.

1836.

HEENEY
v.
ST. PETER'S
CHURCH.

About the sixteenth day of April one thousand seven hundred and ninety-four, the then trustees of the church caused the following notice and rules, in relation to a sale of the pews, to be published :—

"ST. PETER'S CHURCH.

The trustees of St. Peter's Church having determined to make sale of the pews of said church, have appointed the 21st day of this month (April,) being Easter Monday, for that purpose. The sale to begin at eleven o'clock; and in order to avoid all cause of jealousy and distinction or complaint for the time to come, have (in vestry assembled) adopted the following rules and regulations, viz :

I. No preference to be given to any person whatever, but each pew to be disposed of to the highest purchaser as agreed upon on the day of sale and an annual rent to be paid for each pew.

II. The rent of each pew to be paid quarterly, that is to say, every three months.

III. That every person put in possession of a pew in said church shall, in future, be deemed the right owner and have his or her name entered in the church book.

IV. That on all future occasions the subscribers shall be equally entitled to the preference of any vacant pews.

V. That no person, not being a subscriber, shall get a vacant pew whilst a subscriber or his or her heir wanting a pew shall apply for it.

VI. That the highest subscriber at all times wanting a pew or willing to exchange his pew shall have the preference of a vacant pew.

VII. That no person shall be allowed to sell or give his or her pew to any friend or stranger, but it shall descend in right only to such relation as would be his or her heir at law, provided such heir belong to said church.

VIII. That every pew vacated for three years without a lawful claimant, shall be the property of such person who gets it by his subscription ; but if the former owner should

1836.

HEENEY
v.
ST. PETER'S
CHURCH.

return, such person shall be entitled to the first vacant pew.

IX. That any person that shall be known to let his pew or any part thereof for more than the just value, according to the yearly rent, shall be dispossessed of it or fined as a trafficker in the church. The fine to be given to the poor.

X. That every person who shall neglect to pay the rent of his pew for six months after it becomes due, shall be dispossessed of it and the pew given to another.

April 16th, 1794."

On the day appointed for the sale of the pews under the above conditions, the complainant became the purchaser of one pew, then known as No. 75, and now as No. 74, for the sum of thirty-one dollars and seventy-five cents and at the rent of twelve dollars and fifty cents per annum.

The complainant occupied and used the pew for thirty-nine years thereafter; but for the last two years he had been an inhabitant of Brooklyn and a pew-holder there, and, consequently, had not used his pew in St. Peter's during such period of two years.

He had been a trustee of the church for some years—but was not, at the time his bill was filed. The prayer for relief was, to the effect of the prayer for the injunction, with the addition that the trustees might be restrained from disturbing the complainant in the enjoyment of his pew and compelled to maintain and keep the present building in repair so that the complainant and other pew-holders might be protected in the enjoyment thereof.

The defendants, in their answer, set forth the ruinous condition of the edifice; and stated that, for safety in entering the church, it was necessary to remove the whole internal central frame work of the roof and all the plastering attached thereto. Also, that a reparation would cost more than two thirds as much as the reasonable cost of a new building. Likewise, that the religious society attached to the church had, for several years past, become so numerous that it was altogether insufficient for their reception and, in consequence, the aisles had been generally so crowded on holidays as to render the pews sometimes inaccessible and hundreds of members, females, children and aged persons, as well as others, attended service on the Sabbath

○

without the walls of the church and were exposed to every inclemency of weather and to the gaze and observation of profane and irreverent persons.

The defendants admitted they had, for the promotion of public worship and the more convenient preaching the gospel and administration of the rites of their religion, resolved, by a corporate bye law or resolution, to take down the old church and erect a large and durable house of worship adequate, by its enlarged size and other accommodations, to the convenient reception of as large a number of persons as would probably ever desire to attend it; and had proceeded to take down the present building and remove the ground around, when they were stayed by the process granted in this cause.

A preliminary injunction had been granted; and a motion was now made to dissolve it.

Mr. *Charles O'Connor*, for the trustees and in support of the motion.

Mr. *James Lynch*, contra.

THE VICE-CHANCELLOR:—We have here a motion to dissolve an injunction granted to a pew-holder against the trustees of St. Peter's Church, restraining them from pulling down and prostrating the present edifice.

It appears that on a sale of pews in the year one thousand seven hundred and ninety-four, the complainant became the purchaser of one: under certain written rules. He had gone on occupying and paying rent for it until two or three years ago, when he removed to Brooklyn and where he now goes to church. The trustees have resolved to pull down the present structure and erect a church of larger dimensions, so as to accommodate an encreasing congregation—the present building not being sufficient for the followers of the church. It also appears that the church is too much dilapidated to allow of repairs, save at a very serious cost.

A question arises as to the right of the complainant to restrain the trustees?

1836.

HEENEY
v.
ST. PETER'S
CHURCH.

1836.

HEENEY
v.
ST. PETER'S
CHURCH.

It is necessary to turn to the conditions upon which the pews were sold in the month of April one thousand seven hundred and ninety-four. By the seventh clause of these conditions, no person was to be allowed to sell or give his pew to a friend or stranger, but the same was to descend in right only to such relation as would be his heir at law, provided the latter belonged to the church. Thus, the party who originally purchased became entitled to something like a qualified fee. The trustees contend that this is a right which must be subject to their control so far as the pulling down of the church is requisite and so long only as the present erection shall stand. This is so, as a general rule. The right to a pew gives no right to the soil. It gives only a limited estate. The law upon this subject is no doubt rightly laid down in the case of *Freligh* v. *Platt,* 5 Cowen, 494; and there it was decided that a sale of pews in a church is not a disposition of real estate; the grantee acquires a limited usufructory right only. He may use the property as a pew; but he has not an unlimited absolute right. He cannot use it lawfully for purposes incompatible with its nature. The right, too, is limited as to time. If the house to which it was an appurtenant be burnt or destroyed by time, the right is gone. And hence, in the present case, it is contended that upon a pulling down and rebuilding, where the accident of time has made it necessary, the pew-holder's right is gone.

This would seem to be in accordance with the principles which govern the English Ecclesiastical courts; and I am inclined to say these principles are also to be considered as a part of the common law. In those courts it is considered that pews of a church are for the benefit of the parishioners generally. The churchwardens have the control of them; and their duty is to assign a pew to each parishioner. When this is done, the person to whom it is assigned becomes entitled to the possession. Pews in some instances are appurtenant to particular dwelling houses, so that the occupier of the house enjoys it. In general, however, pews remain subject to the regulations of the churchwardens. If they want to accommodate more persons, they can make changes. And where a parishioner requires a more per-

manent seat or location, he can apply to the bishop for what is called a " faculty ;" and under it the party gets a right even greater than falls to the lot of an ordinary parishioner : and yet this faculty does not run to a man and his he rs. It may attach to a house or to a person: but not to heirs. There are various cases to show this in the reports of Haggard and Phillimore ;(a) and also the case at law of *Stocks* v. *Booth*, 1 T. R. 428, where it was held, (referring to Burns' Ecclesiastical Law) that even possession for above sixty years of a pew in a church is not a sufficient title to maintain an action upon the case for a disturbance in the enjoyment of it.    The plaintiff must prove a prescriptive right or a faculty and should claim it in his declaration as appurtenant to a messuage in the parish.    It was also held that a faculty to a man and his heirs is bad.    I do not see why these decisions should not have force in the present case.

Here, it is true, there is a written contract, whereby a purchaser became an owner and the right would devolve to his heir, provided the latter became and was a member of the church.    I think, however, there is no necessity to pass definitively upon the construction of this contract. The trustees deem it necessary to rebuild; and whether Mr. Heeney (the complainant) has a title or not, is a matter which can be passed upon hereafter, when he comes to claim a pew in the new building.    There is no just reason why the trustees should be restrained.

No charge is made of any impropriety in regard to the funds ; and it is admitted that a new edifice on this site will be beneficial and that the whole property is still to be used for the purposes of the church.    In the mean time the complainant will be put to no inconvenience: for it is shown that he is in the practice of attending church at Brooklyn where he resides.    The case is a novel one ; but after considering it in all its bearings, I deem it most desirable to

1836.

HEENEY
*v.*
ST. PETER'S
CHURCH.

---

(a) As, for instance, *Tattersall* v. *Knight*, 1 Phill. R. 237; *Fuller* v. *Lane*, 2 Add. R. 426; *Walter* v. *Gunner*, 1 Hagg. 321.    See also, *Partington* v. *Rector, &c. of the parish of Barnes*, 2 Lee's R. 345 ; *Pitman* v. *Bridger*, 1 Phill. 324; *Blake* v. *Osborne*, 3 Hagg. 733.

let the trustees go on and prostrate the present old building —leaving the complainant to his legal and equitable rights with regard to a pew in the new building when it is completed. If there were no good ground for the acts of the trustees, I might do otherwise. As it is, let the injunction be dissolved.