Montgomery Special Term, December, 1849.   *Paige,* J.

## Voorhees and wife *vs.* The Presbyterian Church of Amsterdam and others.

A religious society, incorporated under the general incorporating act of 1801, appointed D. and others on the 25th of Nov. 1831, a building committee for the purpose of purchasing a new church site, and of erecting a new church edifice thereon. This committee purchased a lot, but instead of taking the deed in the names of the trustees of the society, took it in their own names, as individual grantees. They then erected a church edifice thereon; the lot and edifice being paid for with moneys raised from the sale of the old church lot and edifice, and out of subscriptions by members of the congregation. On the 9th of August, 1832, the building committee, by an *absolute conveyance,* granted and conveyed to V. pew No. 45 in the new church edifice. By deed dated May 26, 1834, the committee conveyed to the trustees of the corporation the new church lot and edifice, reserving therein "to the owners of the pews or slips the right to use the same in perpetuity." In 1848, in obedience to a vote of the members of the congregation, the trustees repaired the church, and altered its interior arrangement. By these alterations, the pew of V. was taken down and removed and the pulpit erected in its place. The means of paying the expense of the repairs was raised by subscription. In an action brought by V. against the society and its trustees, to recover possession of pew No. 45, or the place formerly occupied by it in the church, and damages sustained by reason of his ejection from such pew, and the removal thereof by the trustees;

*Held* 1. That D. and his associates, by taking the deed of the church lot in their own individual names as grantees, acquired and held the title as mere naked

trustees for the use of the congregation. And that the equitable estate of the corporation as *cestui que trust* therein was immediately, by the 4th section of the act of April, 1813, for the incorporation of religious societies, turned into a legal estate.

2. That as D. and his associates acted as agents and trustees of the corporation, or of the corporators, in the purchase of the lot and in the erection of the new church thereon, and paid for the lot and house with moneys belonging to the corporation, the society had an equitable interest in the new church edifice and lot, which a court of equity would protect; upon the equitable principle that no person will be permitted to purchase an interest in property and hold it for his own benefit, where he has a duty to perform in respect to such property which is inconsistent with the character of a purchaser on his own account and for his individual use; and that if he takes a conveyance in his own name he will, in equity, be considered as holding the estate in trust for his principal, or *cestui que trust.*

3. That as V. had at least a knowledge of facts sufficient to put him on inquiry as to the trust in favor of the corporation, at the time he purchased the pew in question, he purchased subject to all the legal and equitable rights of the corporation in the new church lot and edifice; and as, at the time he received from the building committee a deed of such pew, they had no title to, nor any right to convey the same, he acquired, under his deed, no estate whatever, in the pew.

4. That if there was any doubt about sustaining the validity of a trust in the new church edifice and lot, in favor of the corporation, upon either of the foregoing grounds, the trust was valid as a *resulting trust,* either at common law or by the revised statutes; the purchase money having been paid by the corporation.

5. That the beneficial interest of the corporation, in the lot, was immediately, by the 45th section of the article of the revised statutes relative to uses and trusts, or by the 4th section of the general act for the incorporation of religious societies, turned into a legal right.

6. That if a trust resulted in favor of the corporation, on the delivery of the deed to D. and others, which was turned into a legal right; or if the corporation, in any of the other modes above mentioned, acquired an equitable estate and interest in the church lot and edifice, which was transmuted into a legal estate, V. acquired no title, either legal or equitable, to the pew in question, under his conveyance from D. and others.

7. That the conveyance of the pew in fee to V. could not enure as a lease, or be construed to operate as a lease.

8. That if the trustees had executed a valid lease of the pew to V. he could not have maintained an action against them, to recover possession of the pew, or of the place formerly occupied by it. That the right acquired by him would only have been a right to the use of the pew during divine service, in subordination to the more general right of the trustees in the soil and freehold; and subject to the right and power of the trustees to alter and repair the church.

The trustees of a religious society incorporated under the general act, have no power to alienate or dispose of the real estate of the church, except such as is

Voorhees *v.* The Presbyterian Church of Amsterdam.

derived from the act to provide for the incorporation of religious societies. And that act only authorizes them to demise and lease the real estate of the church; to sell the same on obtaining the chancellor's order for that purpose; and to rent the pews. They have no power to make an absolute sale of a pew, in perpetuity, without any reservation of rent.

The interest of a pew-holder, in his pew, is a qualified interest. It is limited to the use thereof during divine worship. It is limited also, as respects time. If the house is burnt, or destroyed by time, the right is gone.

The pew-holder has no title to the soil on which the edifice stands, nor to the edifice itself. The building and soil are the property of the corporation; and the seisin and possession of the same are in the trustees.

Whenever it is necessary or proper, the trustees may take down the old edifice, and rebuild on the same spot or elsewhere, and may alter the form and shape of the building for the purpose of making it more convenient and spacious.

In doing this they may take down and remove the pews, when necessary. And the pew-holders can not maintain either trespass or ejectment, against the trustees.

But if a pew is destroyed for convenience only; or if the trustees have been guilty of a wanton and malicious abuse of their power in destroying it, the owner has a remedy, by an action to recover damages by way of an indemnity for the loss of his pew.

It *seems* the language of the 4th section of the act to provide for the incorporation of religious societies, is sufficiently comprehensive and explicit to give effect to a use or trust in favor of an incorporated religious society, although not expressed in the conveyance to the trustees, or in a declaration of trust.

It *seems* it was the intention of the legislature to give effect to even a parol trust in favor of a religious corporation.

The re-enactment, in 1813, of the act of 1801 for the incorporation of religious societies, without re-enacting the statute of frauds, may be regarded as a modification or amendment of the statute of frauds, so far as to make a use or trust in favor of a religious society an exception to the provision of the statute of frauds, which required that declarations of trust should be in writing.

A reservation or exception, in a deed, in favor of a third person who has no title or interest in the land, is inoperative.

THIS action was brought by the plaintiffs to recover possession of pew No. 45, in the church of the defendants in the village of Amsterdam, or the place formerly occupied by such pew in the church edifice, and damages sustained by reason of the trustees of the church entering upon such pew and ejecting the plaintiffs therefrom, and removing such pew, with the appurtenances, &c. It appeared by the pleadings, and was conceded on the trial, that the church was regularly incorporated in 1807 under the general incorporating act of 1801, (1 *Web. & Skin.*

ed. *Laws of N. Y.* 338,) and that the other defendants were the trustees of the church. On the 25th of November, 1830, David Deforest and others, all members of the congregation, were appointed by the congregation a building committee, for the purpose of purchasing a new site, and of erecting a new church edifice thereon. This building committee purchased a church lot and took a deed thereof, bearing date November 25, 1830. Instead of taking the deed in the names of the trustees of the society, they took it in their own names as individual grantees. After the purchase of the lot they proceeded to erect, and erected, a church edifice thereon. The church lot and edifice were paid for with moneys raised from the sale of the old church lot and edifice owned by the defendants, and out of subscriptions by members of the congregation. After the new church edifice was erected, the building committee, by an absolute conveyance dated August 9, 1832, in consideration of $43 to them in hand paid, granted and conveyed to the plaintiff Samuel Voorhees, and his heirs and assigns, pew No. 45 in the new church edifice, described as being in the new brick Presbyterian church in the village of Amsterdam. This conveyance was signed and sealed by the grantors, but not witnessed or acknowledged. On the first of January, 1840, S. Voorhees assigned all his right and interest in said deed to Betsey R. Voorhees his wife, in consideration of one dollar. This assignment was signed and sealed by S. Voorhees, but not witnessed nor acknowledged. The conveyance of the pew to S. Voorhees, and the assignment to his wife, were objected to as evidence, on the ground that their execution was neither acknowledged nor attested by a witness. By deed dated May 26, 1834, the building committee conveyed to the trustees of the corporation the new church lot and edifice, reserving therein "to the owners of the pews or slips the right to use the same in perpetuity." Several years ago the plaintiffs ceased their attendance upon divine worship at this church; but they rented their pew to members of the congregation. Most of the owners of pews had surrendered their pews to the trustees, to be rented for the purpose of raising means to pay the salary of the minister. In

1848 the church edifice needed extensive repairs, and the increase of the society made additional seats necessary, for the accommodation of its members. In that year, in obedience to a vote of the members of the congregation, the trustees thoroughly repaired the church and caused all the old pews and slips to be removed, and others to be constructed, and the whole arrangement of the interior of the edifice to be altered and improved, and the pulpit to be taken down and a new one erected, and its site to be changed. In this new arrangement, the plaintiffs' pew was taken down and removed, and the pulpit erected in its place. It appeared that the alterations and repairs were judicious, and required by the good of the society. Under the new arrangement of the seats more people could be seated in the church, than was before practicable. The amount necessary to pay the expense of the repairs was raised by subscription. It was proved that ever since the new edifice was erected, in 1830, it had been used as a house of divine worship, and there had been maintained in it a stated preaching of the gospel.

The cause was tried by the court, without a jury.

*T. B. Mitchell* and *O. Meads,* for the plaintiffs.

*C. B. Cochran* and *D. P. Corey,* for the defendants.

PAIGE, J. The Presbyterian Church of Amsterdam village, &c. one of the defendants, was regularly incorporated under the "act to provide for the incorporation of religious societies," passed March 27th, 1801. By the 4th section of that act the trustees of every congregation incorporated under the act were authorized and empowered to take into their possession and custody all the temporalities belonging to the congregation, whether the same consisted of real or personal estate, and whether the same had been given, granted or devised directly to such congregation, or to any other congregation for their use. That section also authorized the trustees to recover, hold, and enjoy all the debts, demands, rights and privileges, and all churches, meeting houses, &c. with the appurtenances,

Voorhees *v.* The Presbyterian Church of Amsterdam.

and all estates belonging to such congregation, in whatsoever manner the same might have been acquired, or in whose name soever the same might be held, as fully and amply as if the right or title thereto had originally been vested in the trustees; and also to purchase and hold other real and personal estate, and to demise, lease and improve the same for the use of the congregation, &c. and also to repair and alter their churches or meeting houses, and to erect others if necessary, and to regulate and order the renting of the pews in their churches or meeting houses.

This general incorporating act was re-enacted *in hæc verba,* with the addition of a few more sections, on the 5th of April, 1813. The act of April 5th, 1813, was not revised or repealed when the revised statutes were adopted; and it still remains in force. (*See* 3 *R. S.* 244, 3*d ed.*) Section 11 of the act of April 5th provides that the chancellor, upon the application of a religious incorporation, &c. may make an order for the sale of any real estate belonging to such corporation, and may direct the application of the proceeds of the sale, &c. In the *Dutch Church in Garden-street,* v. *Mott* (7 *Paige,* 81,) the chancellor held that the 4th section of the act of March, 1801, transferred to the trustees of an incorporated religious society, without any conveyance, the legal title of any real or personal property held in the name of others upon a mere naked trust, for the use of the church or congregation, or of the corporators. The 4th section of the act of April 5, 1813, is a literal copy of the 4th section of the act of March, 1801.

Daniel Deforest and his associates, who, as the building committee appointed by the congregation, purchased the site of the new church, by taking the deed in their own individual names as grantees, acquired and held the title as mere naked trustees for the use of the congregation. And this legal title was, by the 4th section of the act of April 1813, immediately transferred to the trustees of the corporation. It may be objected, as the use or trust in favor of the corporation is not expressed in the deed, or manifested by some declaration of trust in writing, that it is void under the statute of frauds; which declares that no

trust can be created unless by act or operation of law, or by a deed or conveyance in writing. (2 *R. S.* 135, § 6, 1*st ed.*) I think, however, that the language of the 4th section of the act to provide for the incorporation of religious societies is sufficiently comprehensive and explicit to give effect to a use or trust in favor of an incorporated religious society, although not expressed in the conveyance to the trustees, or in a declaration of trust. The words of that section are, that the trustees of the religious society, when incorporated, "shall hold and enjoy all estates belonging to the society, in whatsoever manner the same may have been acquired, or in whose name soever the same may be held, as fully and amply as if the right or title thereto had originally been vested in the trustees." The statute of frauds, passed February 26, 1787, was not re-enacted in either of the revisions of 1801 or of 1813. It was, however, revised and consolidated in the revised statutes of 1830. The act to provide for the incorporation of religious societies was re-enacted in both 1801 and in 1813. I am inclined to believe that the intent of the legislature was to give effect to even a parol trust in favor of a religious corporation. The subsequent re-enactments of the act to provide for the incorporation of religious societies, without re-enacting the statute of frauds, may be regarded as a modification or amendment of the statute of frauds, so far as to make a use or trust in favor of a religious society an exception to the provision of the statute of frauds, which required that declarations of trust should be in writing. That part of the statute of frauds which relates to the creation of estates or trusts in lands being by deed or conveyance in writing, contained in the revised statutes, may be regarded as a mere consolidation and publication therein, of that part of the old statute of frauds. And such consolidation and publication will not be deemed to alter the old statute of frauds, so far as it affects uses and trusts in favor of religious societies. (3 *R. S.* 184, 3*d ed. repeal act,* § 2. 2 *Hill,* 380, *note c.*)

In *Tucker* v. *The Rector, &c. of St. Clement's Church,* (8 *N. Y. Legal Observer,* 257,) the superior court of the city of New York decided that the powers of religious corporations in-

corporated under the general act were not affected by the provisions of the revised statutes in relation to uses and trusts. See opinion of Duer, J. If the article of the revised statutes in relation to uses and trusts, (which enacts the most radical changes in the law of uses and trusts,) is not applicable to religious corporations incorporated under the general act, the 5th section of the title in relation to fraudulent conveyances (2 *R. S.* 135,) requiring the creation of estates or trusts in lands to be by deed or conveyance in writing, which is a substantial re-enactment of section 10, and part of section 12 of the old statute of frauds, without material alteration, should not be deemed applicable to uses and trusts in favor of such religious societies.

But under another view which may be taken of this case, the corporation had an equitable interest in the new church edifice and lot, which a court of equity will protect. It is a rule in equity that no party is permitted to purchase an interest in property and hold it for his own benefit, where he has a duty to perform in relation to such property, which is inconsistent with the character of a purchaser on his own account, and for his individual use. (*Van Epps* v. *Van Epps*, 9 *Paige*, 241. *Torrey* v. *Bank of Orleans, Id.* 649.) And if he takes a conveyance in his own name he will, in equity, be considered as holding the estate in trust for his principal or cestui que trust. (*Sweet* v. *Jacocks*, 6 *Paige*, 355.) And a subsequent purchaser with notice of the trust becomes a trustee, chargeable with the trust, notwithstanding he may have paid a full consideration. (1 *John. Ch.* 450, 566; 4 *Id.* 135.) In this case Deforest and his associates acted as agents and trustees of the corporation, or of the corporators, in the purchase of the site of the new church, and in the erection of the new church thereon. They paid for the lot, and the expenses of the new church, with moneys belonging wholly to the corporation. The moneys so paid were composed of the proceeds of the old church lot and edifice, and of moneys raised by subscription from the members of the congregation, which are to be regarded as donations to the corporation and therefore as belonging to the corporation. Deforest and his associates took the legal title to the new church lot as mere naked

trustees of the corporation, and the equitable estate of the corporation as *cestui que* trust therein, was immediately, by the 4th section of the act for the incorporation of religious societies, turned into a legal estate. The evidence shows that S. Voorhees had at least a knowledge of facts sufficient to put him on inquiry as to the trust in favor of the corporation, at the time he purchased the pew in question. And having such notice he purchased subject to all the legal and equitable rights of the corporation in the new church lot and the new church edifice; and as at the time Voorhees received from the building committee a deed of the pew in question, they had no title to, nor any right to convey the same, he acquired under his deed no estate whatever in the pew.

The counsel for the plaintiffs contend that the article of uses and trusts in the revised statutes is applicable to religious corporations, and that no trusts in favor of a religious society or corporation are now valid unless they are authorized by that article. If this doctrine is to be received it would subvert all simple trusts in favor of a religious society not incorporated; and the trustees of the society, when incorporated under the general incorporating act, would have no right or power as authorized by the 4th section of that act, to take into their custody real estate which may have previously been granted to trustees for the use of the society. The act to provide for the incorporation of religious societies was neither revised, or repealed when the revised statutes were adopted. And I believe that act remains in force, with all the attributes it possessed previous to the adoption of the revised statutes. The superior court of the city of New-York, in the case of *Tucker* v. *The Rector, &c. of St. Clement's Church,* (*supra,*) came to this conclusion. In that case Duer, J. and his associates, Justices Mason and Campbell, held that the powers of religious corporations, incorporated under the general act, were not affected by the provisions of the revised statutes in relation to uses and trusts. Notwithstanding the modification of the law of uses and trusts by the revised statutes, a conveyance to a person for the use of a religious society not incorporated, made since the adoption of the re-

vised statutes, will create a valid trust in favor of such society ; and the 4th section of the act to provide for the incorporation of religious societies, will, immediately on the incorporation of the society, transfer the legal title to the trustees of the corporation. If the article of uses and trusts, in the revised statutes, should be regarded as applicable to religious corporations, a conveyance in trust for, or for the use of, an incorporated religious society would, by virtue of the 47th section of that article, pass the legal estate directly to the corporation. ( *Wait* v. *Day*, 4 *Denio*, 442.)

But if there should be any doubt about sustaining the validity of a trust in the new church edifice and lot, in favor of the corporation, upon either of the foregoing grounds, there can be no doubt that the trust was valid as a resulting trust, either at common law, or under the article of the revised statutes relative to uses and trusts. I have already stated that the facts of the case authorize me to find that the purchase money for the new church lot, was wholly paid for by the religious corporation. At common law, if a conveyance is made to one person, and the consideration is paid by another, a trust in equity results in favor of him who paid the money. The revised statutes have modified this rule of the common law, and provide that no such trust shall result in favor of the person paying the consideration, unless the conveyance shall have been taken without his consent or knowledge, in the name of the alienee. (*Brewster* v. *Power*, 10 *Paige*, 567. 2 *R. S.* 14, §§ 51, 52, 53, 3*d* ed. 4 *Kent's Com.* 305, 306.) In this case there is no evidence that either the trustees of the congregation or the corporators, either consented that Deforest and his associates should take the deed of the new church lot in their own names, or that any one of them had any knowledge, at the time of the execution and delivery of the deed, that it was so taken. A trust therefore resulted in favor of the corporation, and the beneficial interest of the corporation in the lot was immediately, by the 45th section of the article relative to uses and trusts, or by the 4th section of the general act for the incorporation of religious societies, turned into a legal right. ( *Wait* v. *Day*, 5 *Denio*, 442. *Noyes*

*v. Clark,* 7 *Paige,* 181.) The evidence shows that the plaintiff, S. Voorhees, had knowledge of facts sufficient to put him on inquiry as to the trust in favor of the corporation. It is a well settled principle that if a party acts in the face of facts and circumstances which are sufficient to put him on inquiry, he acts contrary to good faith, and at his peril. (*Anderson* v. *Van Allen,* 12 *John.* 345.) The plaintiffs, therefore, do not bring themselves within the 54th section of the article relative to uses and trusts. They are not purchasers without notice of the resulting trust in favor of the corporation, within the meaning of that section. The conveyance of the pew in question to Voorhees, described it as being in the new brick Presbyterian church in the village of Amsterdam. The church was erected as a house of public worship for the members of the Presbyterian church of that village. Voorhees was bound to inquire to what religious corporation connected with the Presbyterian denomination the church referred to in his deed belonged, and what interest such corporation had in the church. He had no right to presume that his grantors erected the church on their own individual property, or for their own exclusive benefit. It is sufficient to constitute a resulting trust, if the consideration money upon the purchase was advanced by some other person, as a loan to the *cestui que trust,* or as a gift to him, or for his benefit. (1 *Barb. Ch. Rep.* 499. 1 *John. Ch. Rep.* 582. 5 *Id.* 1.) And if the *cestui que trust* pays only a part of the purchase money, there will be a resulting trust in his favor, *pro tanto.* (4 *Kent's Com.* 306. 2 *John. Ch. Rep.* 410.)

If the evidence authorizes the inference that Deforest and his associates purchased the new church lot for their own individual benefit; and took the deed in their own names with intent to defraud the corporation, or the corporators, then a trust resulted in favor of the corporation, on the ground of a purchase by them of the church lot with moneys belonging to the corporation, in violation of the trust reposed in them by the congregation. (2 *R. S.* 14, § 53, 3*d ed.* 4 *Kent's Com.* 306. 10 *Paige,* 249.)

If there was no valid trust in favor of the religious corporation, in the church lot, and if the legal title of the lot was in

Deforest and his associates, the corporation had nevertheless an equitable title to the church edifice. That was erected with the money of the corporation; money raised by the sale of the old church lot, and by subscription for the benefit of the corporation. The church was erected by Deforest and his associates, and of course with their consent. Under these circumstances the trustees of the corporation, for the benefit of the congregation and its members, had a beneficial interest in the church edifice, which equity would protect and preserve for the use of the congregation. And if Voorhees had notice of this equitable interest in the church edifice at the time he received his conveyance of pew No. 45, he took his title subject to this prior equitable interest. The rule in equity is also applicable to this case, that if a man stands by and suffers another to build on his land, and sets up no right to it, he will lose his land. (7 *John.* 243. 1 *John. Ch.* 354.) In this case there is no evidence to show that the trustees of the corporation knew that the legal title was in Deforest and his associates, when the church was erected.

If a trust resulted in favor of the corporation, on the delivery of the conveyance to Deforest and his associates, which was turned into a legal right, or if the corporation, in any of the other modes herein before mentioned, acquired an equitable estate and interest in the church lot and church edifice, which was transmuted into a legal estate, Voorhees acquired no title whatever, either legal or equitable, to the pew in question, under his conveyance from Deforest and his associates.

But inasmuch as the trustees of the congregation, in May, 1834, accepted a deed from Deforest and his associates, of the new church lot and edifice, reserving to the owners of the pews or slips the right to use the same in perpetuity, I will regard the deed of S. Voorhees in like manner, as I would have done, had it been executed by the trustees themselves. This is the most favorable view of the case which can be taken for the plaintiffs. For as the religious corporation had an equitable estate in the church lot and edifice, of which the plaintiffs had notice, Deforest and his associates, in their sale of the pew in question to S. Voorhees, must be regarded as acting merely as trustees of the

corporation ; and they could not, therefore, exercise any power of alienation which the trustees of the corporation did not themselves possess. I am aware that this reservation may be criticised. It may be said if Deforest and his associates had no right or authority to sell the pews, that the grantees acquired no title thereto, and that therefore there were no owners of pews to whom the reservation in the deed applied. And it may also be insisted that this reservation in favor of the owners of the pews or slips, is void for another reason. A reservation or exception, in a deed, in favor of a third person who has no title or interest in the land, is inoperative. (*Jackson* v. *Swart*, 20 *John.* 87. *Hornbeck* v. *Westbrook*, 9 *Id.* 73. *Hornbeck* v. *Sleight*, 12 *Id.* 200. 2 *Hil. Abr.* 360, § 147.) Voorhees was a stranger to the deed from Deforest and his associates to the trustees of the corporation. He had no title or interest in the pew in question, at the date of that deed.

Regarding, however, the deed to S. Voorhees as a deed from the trustees of the corporation, the question presents itself, whether the trustees of a religious corporation, incorporated under the act to provide for the incorporation of religious societies, can make an absolute sale in perpetuity of the pews, without the reservation of any rent in the deeds of conveyance. The 4th section of the act, authorizes the trustees to hold and enjoy all churches, &c. and all estates belonging to the congregation, &c. and to purchase and hold other real and personal estate ; and to demise, lease and improve the same for the use of the congregation ; to repair and alter the churches, and to erect others if necessary, and to regulate and order the renting of the pews in the churches. The 11th section authorizes the trustees to sell any of the real estate of the corporation, on obtaining the chancellor's order for that purpose. These two sections embrace all the powers of sale and disposition of the real estate, of the corporation, conferred upon the trustees by the act. They have no power to sell, absolutely, any part of the real estate, without the chancellor's order. They can demise and lease the same, or rent the pews, without such order. Their powers of disposition are limited by the act to a demise or lease of the

real estate, or to the renting of the pews in the church, and to a sale of the real estate absolutely, on obtaining the chancellor's order directing the sale. An absolute sale and conveyance of the real estate without the chancellor's order, would convey no title. (2 *Kent's Com.* 281. *Dutch Church in Garden-st.* v. *Mott*, 7 *Paige*, 83, 84.) The conveyance of the pew in question to S. Voorhees was an absolute sale in fee. If it was a sale of real estate, within the meaning of the 11th section, it was void because it was not authorized by the chancellor's order. If it was a conveyance under the 4th section, it was void because it was not a lease reserving rent, but an absolute grant, without condition or reservation. " A lease is a contract for the possession and profits of lands and tenements on the one side, and a recompense of rent or income on the other ; or a conveyance of lands, &c. to one for life, for years, or at will, in consideration of a rent or other recompense." (1 *Hil. Abr.* §§ 1, 129, 130. 7 *Cowen*, 326. 4 *Kent's Com.* 85. 2 *Bouv. Law Dic.* 17.) The words of conveyance appropriate in a lease are " demise, lease, and to farm let." (1 *Hil. Abr.* 130, § 6.) These words are technical words, well understood, and are the most proper that can be used in making a lease. (2 *Bouv. Law Dic.* 18.) The technical meaning of *demise* is a lease for a term of years. (1 *Id.* 445.) The meaning of the words demise and lease, as used in the 4th section of the act to provide for the incorporation of religious societies, is very clearly a lease for years in consideration of rent. If a sale of pews in a church is not a sale of real estate within the meaning of the 11th section of the act, as was held by Justice Woodworth in *Freligh* v. *Platt*, (5 *Cowen*, 496,) because the grantee acquires a limited usufructuary right only, it may be contended that the authority given, in the 4th section, to the trustees to demise and lease the real estate of the church, does not apply to a lease of the pews, because the pews, separate from the seisin and possession of the soil and building, are not real estate within the meaning of the act. If this is the true construction of the section, the only authority conferred by the act upon the trustees, to lease the pews, is to be found in the power given them to regulate and order

the renting of the pews.   At common law, corporations aggregate have an incidental right to alien and dispose of their lands and chattels, unless specially restrained by their charters, or by statute.   But the powers of religious corporations incorporated under the general act, are limited by that act to a demise, lease, or improvement of their real estate.   And they have no power of sale, without the chancellor's order.   (2 *Kent's Com.* 281, 2d ed.   7 *Paige*, 83.)   Where the powers of a corporation are enumerated in its charter, the maxim "*expressio unius exclusio alterius*" is applied, and the enumeration is construed as a prohibition of all it does not embrace.   (*Tucker* v. *St. Clement's Church*, 8 *N. Y. Leg. Obs.* 261.)   A corporation has no powers, except such as are specifically granted, and those which are necessary to carry into effect the powers expressly granted.   The specification of certain powers operates as a restraint to such objects only, and is an implied prohibition of the exercise of other and distinct powers.   (*People* v. *Utica Ins. Co.* 15 *John.* 382, *per Thompson, J.*)   It is also a general rule that a corporation can only act in the mode prescribed by the law creating it.   (*Beatty* v. *Marine Ins. Co.* 2 *John.* 114.   *Dawes* v. *The North River Ins. Co.* 7 *Cowen*, 462.   *Jackson* v. *Hartwell*, 8 *John.* 330.)   The deduction from these principles is clear, that the trustees of a religious corporation, incorporated under the general act, have no power to make an absolute sale of a pew in perpetuity, without reservation of rent.   If the trustees are regarded as the donees of a power, or as invested with a statute authority, they in either case are bound to pursue the power or authority in the mode and form of alienation prescribed by the general act for the incorporation of religious societies.   If this is not done, in their alienations of the real estate of the corporation, the deed will be void.   (1 *Hill*, 114, 115.   2 *Cowen*, 228.   4 *Kent's Com.* 344, 2d ed.)   If the act to provide for the incorporation of religious societies confers no powers on the trustees to make an absolute sale of a pew in perpetuity without reservation of rent, it seems to me that the grant to S. Voorhees can derive no aid from the doctrine of *cy pres.*   This doctrine applies to devises, and it authorizes the court to give effect to

the intention of the testator, as far as the rules of law will allow. (*Cruise's Dig. tit.* 38, *Demise, ch.* 9, § 18. 1 *Bouv. Law Dic.* 401. 2 *Story's Eq. Jur.* § 1169.) Nor can the plaintiffs derive any aid from the rules of construction applicable to conveyances which derive their effect from the statute of uses. They can derive no aid from the rule, that if a deed can not operate in the manner intended by the parties, it will be construed to operate in some other manner, if consistent with the rules of law; or from the rule that in the construction of a conveyance the intent of the parties will be carried into effect so far as it can be collected from the whole instrument, and is consistent with the rules of law. (*Cruise's Dig. tit. Deed, ch.* 23, § 17. 16 *John.* 178. 22 *Wend.* 489. 1 *R. S.* 748, § 2, 1*st ed.*) In this case, the intention of the parties can not in any manner be carried into effect consistent with the rules of law. (16 *John.* 178. 22 *Wend.* 489. 2 *R. S.* 33, § 2, 3*d ed.*) The trustees of the religious corporation had no power to alienate or dispose of the real property of the church, except such as was derived from the act to provide for the incorporation of religious societies; and that act only authorized them to demise and lease the real estate of the church, or to rent the pews. I concede that in certain cases the execution of a power may be good in part and bad in part, and that the excess only will be void. But this is only where there is a complete execution of the power, and only a distinct and independent limitation is unauthorizedly added, and the boundaries between the sound part and the excess are clearly distinguishable, as in the case of a power to lease for 21 years and the lease is made for 26 years. (4 *Kent's Com.* 346.) In such a case, the lease is bad at law, but good in equity for 21 years, because it is a complete execution of the power, and it appears how much it has been exceeded. (4 *Kent's Com.* 107. 1 *Burr.* 120. 1 *Swanst.* 337, 357. 10 *East,* 158.) So where the good and bad part of a trust can be separated, and the one can be sustained without giving effect to the other, the good part will be held valid, while the bad part is held void. As where there is an assignment in trust to sell and mortgage real estate for the benefit of the creditors, the assignment may

be held valid as to the trust to sell, although the trust to mortgage is void. (*Darling* v. *Rogers*, 22 *Wend.* 483. *Hawley* v. *James*, 5 *Paige*, 320.) In this case the good and bad parts of the deed can not be separated, as can be done in the case of a power to lease for 21 years, and a lease is executed for 26 years. It does not appear here how much the power of the trustees has been exceeded, so that the excess may be declared void.

The conveyance of the pew in fee to S. Voorhees can not enure as a lease, or be construed to operate as a lease. The court can not make an entire new contract for the parties. They have no power to declare how long the lease shall run, or what rent shall be reserved in it. Here the intent of the parties to convey absolutely, in fee, can not be carried into effect consistently with the rules of law.

I therefore conclude that the conveyance to the plaintiff S. Voorhees of pew No. 45, not being authorized by the act to provide for the incorporation of religious societies, was void, and conveyed no title to him, and that his assignment consequently passed no title to his wife.

But if the trustees had executed a valid lease of pew No. 45 to the plaintiffs, the plaintiffs could not have maintained an action against the trustees to recover possession of the pew, or the place formerly occupied by it. The right acquired by the plaintiffs would only have been a right to the use of the pew during divine service, "in subordination to the more general right of the trustees in the soil and freehold." They took their title subject to the right and power of the trustees to alter and repair the church. (3 *Hill*, 26. 4 *Paige's Rep.* 302.) The trustees, in repairing and altering the church, exercised a lawful power conferred upon them by statute. The alteration of the church by the trustees, as appears from the evidence, was a judicious and proper improvement, beneficial to the members of the congregation, and was made in accordance with a vote of the congregation. The interest of a pew-holder in his pew is a qualified interest. It is limited to its use during divine worship. It is limited, too, as to time. If the house is burnt, or destroyed by time, the right

Voorhees *v.* The Presbyterian Church of Amsterdam.

is gone. (5 *Cowen,* 496.) The pew-holder has no title to the soil on which the edifice stands, nor to the edifice itself. The building and soil are the property of the corporation ; and the seisin and possession of the same are in the trustees. Whenever it is necessary or proper, the trustees may take down the old edifice and rebuild on the same spot, or elsewhere, and may alter the form and shape of the building, for the purpose of making it more convenient, and adapting it to the increased wants of the society. And in doing this they can, for useful purposes, and to carry out the contemplated improvement, take down and remove the pews of the pew-holders. The property of the pew-holders in their pews is necessarily subject to the right of the trustees to alter and improve the internal arrangement of the church, as the good of the society may require. And if, in doing this, the pews are necessarily destroyed, the pew-holders can not maintain either trespass or ejectment against the trustees. The pew-holder has a remedy where his pew is destroyed for convenience only ; or where the trustees have been guilty of a wanton and malicious abuse of their power in destroying his pew. In such cases his remedy, and his only remedy, is an action to recover damages by way of an indemnity for the loss of his pew. If the church edifice is so far decayed as to be unfit for use as a house of public worship, and it is for that reason taken down, the pew-holder's right to his pew is gone, and he is not entitled to any indemnity for its loss. (9 *John.* 147, 156. 2 *Edw. Ch. Rep.* 608. 17 *Mass. Rep.* 434. 1 *Pick.* 102. 3 *Id.* 344. 3 *Edw. Ch. Rep.* 138. *Bronson* v. *St. Peter's Church,* 7 *N. Y. Leg. Obs.* 361.)

The defendants are at liberty to amend their answer so as to conform it to the proof, if they think proper to do so.

Judgment must be entered for the defendants.