Voorhees *v.* Presbyterian Church of Amsterdam.

New trial denied.

[CLINTON GENERAL TERM, July 4, 1853. *Hand, Cady* and *C. L. Allen*, Justices.]

---

VOORHEES and wife *vs.* THE PRESBYTERIAN CHURCH OF AMSTERDAM and others.

An incorporated religious society appointed A., B., C., D. and E. to purchase a site and erect a church; and the avails of their old edifice, and certain subscriptions, were to be used for that purpose; the subscribers having the right to bid off pews on their subscriptions. A., B., C., D. and E. took a conveyance of a site, in their own names, in 1830, and built thereon a church, applying the avails of the old church and the subscriptions. In 1832 they sold the pews, and gave a deed of one to the plaintiff, a purchaser; and in 1834 they conveyed to the trustees of the corporation, by a deed expressing a consideration of $5000, and containing covenants for quiet enjoyment; the deed " excepting and reserving" to " the owners of the pews and slips" in the church " the right to use the same in perpetuity." In 1848, the church edifice having become dilapidated and dangerous for the society to worship

in, the corporation substantially rebuilt it, except the walls, and in so doing remodeled the inside, and demolished the pew the plaintiff had purchased, and placed the pulpit on its site. *Held* that the title to the pew passed to the plaintiff by the deed to him; but that its demolition was necessary and lawful, and that the plaintiff could not recover damages therefor, nor recover the site.

A grantee of a pew takes a limited estate—a usufructuary interest—subject to the general right of the owners of the church.

If the church edifice becomes useless by dilapidation, or destroyed by fire or casualty, or has to be rebuilt, the right of the pewholder is gone.

If a pew can be taken for the purposes of convenience, improvement, and embellishment, the owner is at least entitled to indemnity.

The act providing for the incorporation of religious societies, passed April 5, 1813, notwithstanding the revisions of our constitution and statutes, is still in force.

The statute abolishing uses and trusts extends to every use and trust not therein excepted; and there is no qualification or exception, expressed or implied, in favor of public trusts and charitable uses.

In those cases in which an incorporated religious society can take and hold real estate, a trust cannot arise, be created, or declared, in favor of such corporation, by parol, except in those cases where it could arise, be created, or declared in favor of a private person. Except when otherwise provided the same rule, as respects uses and trusts, the statute of frauds, and the modes of acquiring real property, applies to them.

A deed of real estate, without a subscribing witness or acknowledgment, is good, except as against a purchaser or incumbrancer.

Whether the purchase should not be *bona fide? Quære.*

Recitals in a deed may be evidence against a grantor.

A husband cannot convey real estate to his wife, directly.

THIS was an appeal from a decision made by Justice Paige, at a special term. The case below is reported 8*th Barb.* 135, where the facts are stated.

*O. Meads,* for the appellants.

*S. P. Heath,* for the respondents.

*By the Court,* HAND, P. J. The assignment or supposed conveyance by the plaintiff, Samuel Voorhees, to Betsey his wife, on the 1st day of January, 1840, transferred no right to her. The right to a pew is an interest in real estate. (*First Bap. Ch. of Ithica* v. *Bigelow,* 16 *Wend.* 32. *Vielie* v. *Osgood,*

Voorhees *v.* Presbyterian Church of Amsterdam.

8 *Barb.* 150.) And the husband cannot convey immediately to the wife. (*Co. Litt.* 3´a, 112 a, *and Harg. notes,* 3 a. *Clan. Rights of Mar. Women,* 1. 4 *Cruise,* 22. 2 *Kent,* 129. *Beard* v. *Beard,* 3 *Atk.* 72. *Moyse* v. *Gyles,* 2 *Verm. R.* 385.) The husband may create a trust in favor of the wife ; and equity will sometimes enforce his contract for her benefit. (2 *Stor. Eq. Jur.* §§ 1374, 1375.) The wife therefore, was not a proper party. Perhaps if the case turned upon that point, the misjoinder could be corrected by amendment. (*Code,* §§ 173, 274.)

There can be no doubt that the act to provide for the incorporation of religious societies, passed on the 5th of April, 1813, is in force, notwithstanding the subsequent revisions of the constitution and the statutes. (*Tucker* v. *St. Clement's Church,* 3 *Sandf. S. C. R.* 242. *Robertson* v. *Bullions,* 9 *Barb,* 87.)

The learned judge, in giving his opinion in this case at special term, was inclined to believe that, under the 4th section of the act, the intent of the legislature was to give effect, even to a parol trust in favor of a religious corporation, and that the statute requiring declarations of trust to be in writing, did not apply to trusts in favor of a religious society. (8 *Barb.* 141.) And it was held by Assistant Vice Chancellor Sandford, that the revised statutes relative to uses and trusts do not apply to charitable uses. (*Shotwell* v. *Mott,* 2 *Sandf. Ch. R.* 46.) With all deference, I think both propositions unsound. The statute " of uses and trusts." is express, positive and distinct, and abolishes every use and trust, except as authorized and modified by the same article. (1 *R. S.* 727.) The opinions of Wright, J. in *Yates* v. *Yates,* (9 *Barb.* 324,) and Duer, J. in *Ayres* v. *The Meth. Ch.* (3 *Sandf. S. C. R.* 351,) on this point, are very able ; and show that there is no qualification or exception, express or implied, in favor of public trusts or charitable uses. No stronger or broader language could well be used, than that "uses and trusts, except as authorized and modified in this article, are abolished." Any specification or enumeration would, almost necessarily, have weakened its effect. Subsequent enactments, authorizing certain trusts and charitable institutions, are also evidence of the intention of the legislature. (*Laws of* 1840,

*ch.* 318. *Laws of* 1839, *ch.* 174 *and* 184. *Laws of* 1841, *ch.* 261. *Laws of* 1848, *ch.* 319.) Nor could the trust claimed to exist in this case, be created by parol, unless the transaction came within the exceptions of the statute. (2 *R. S.* 134, § 6. 1 *Id.* 728, §§ 51, 2, 3.) Resulting trusts may arise by payment of the purchase money, or a portion thereof, by a third person, in favor of the creditors of the latter; also, where the alienee takes the deed by mistake, or in fraud, or in violation of a trust. The first answer states that De Forest and his associates were to receive the conveyance in trust for the corporation; and after reimbursing the "stockholders," and indemnifying themselves by the sale of the pews, &c. they were to convey to the corpo- ration. The answer, a copy of which is found at the end of the paper book in this case, and which it is stated the defendants " claimed to incorporate into the original answer," charges that De Forest and his co-grantees took the conveyance in their own names, without the knowledge or consent of the corporation and society, and in violation of the trust which they had as- sumed. It is also stated this answer is to be deemed to have "been replied to." But supposing it to form a part of the pleadings, there is not any proof whatever, to sustain the above allegation. On the contrary, the proof is, that only part of the expense of building the church was paid by the subscription, and the pews were sold and the proceeds applied to that purpose; the purchase money also applying on the subscription of the purchaser. And the subsequent deed from De Forest and others to the corporation, in which a consideration of $5000 is ex- pressed, and which contains covenants for quiet enjoyment, excepts and reserves "to the owners of the pews and slips," "the right to use the same in perpetuity." There was, therefore, no resulting trust. (*Bodine* v. *Edwards*, 10 *Paige*, 504. *Ostran- der* v. *Livingston*, 3 *Barb. Ch. R.* 416. *Norton* v. *Stone*, 8 *Paige*, 222.) Nor, indeed, any evidence that any was intended by the parties. A religious corporation may take and hold property, for the purposes of its corporate existence. And the donor or grantor may specify to what particular use it shall be appropriated, if it be one of the objects of the incorporation. In

*Tucker* v. *St. Clement's Church*, the grant to the corporation was upon condition that the income of the property should be applied to the maintenance and support of their own rector and minister. The grant being directly to the corporation, there was, in reality, no trust, as the supposed trustee was, in fact, the *cestui que trust ;* the grant being for the benefit of the corporation, and for a purpose to which, without such condition, it ought very properly to be applied.

From the pleadings and proofs in this case, it is very clear to my mind that there was a verbal arrangement with the corporation, the subscribers, and De Forest and his associates, who were selected as a building committee, that the latter should take the avails of the old church and the subscriptions, and purchase a site, and build a house, and sell the pews, allowing subscribers to purchase on their subscriptions ; being in fact an agreement for the purchase and sale of pews ; and when all they should advance had been repaid to them, they were to convey to the corporation. If A. builds a church on his own land, verbally declaring that he intended it for the use of a particular religious society, the latter obtains no title, legal or equitable, by such declaration. In this state, in cases in which they can hold real estate, a trust cannot arise, be created, or declared, in favor of incorporated religious societies, by parol; except in those cases where it could arise, be created or declared, in favor of a private person. They have the same rights, and no other, in this respect, as others. The same rule as to uses and trusts, as to the statute of frauds, and the mode of acquiring real property, applies to them.

In this case, if the whole arrangement or agreement had been in writing, there would have been no difficulty. If the corporation had attempted to withhold the avails of the old church, they could have been compelled to perform or pay damages. Nor could the building committee have been restrained from a sale of the pews to obtain repayment of what they had advanced, even if the trustees of a religious corporation can do no more than lease the pews, except by the order of (the chancellor formerly and now of ) this court or the county court, upon

which I express no opinion. (5 *Cow.* 496. 8 *Barb.* 149 *et seq.*)
The legal title being in De Forest and others, they could con-
vey; and not only so, if the subscription and payments thereon
were upon those terms, they could have been compelled to per-
form. And so with the trustees, if they had obtained the
means to purchase the site and erect the edifice upon a similar
agreement. There is no rule of law by which such corpora-
tions, any more than others, can obtain and retain property in
violation of their contracts, and without compensation. But all
the stipulations, express or implied, except the subscriptions
and the conveyances, seem to have been verbal. However, as
the committee received the avails of the old church, and the
sums raised by subscriptions and sales of the pews, there was
such part performance as would have authorized a court of
equity to interfere, had they refused to convey. Both the cor-
poration and the pew-owners would have been entitled to a per-
formance, after the claims of the committee had been satisfied.
Not so much on the ground of a trust in the ordinary sense of
that term; but upon the agreement. The deed to Voorhees
was therefore good. Not being attested by a witness, or ac-
knowledged, it would not have been effectual against a purchaser
or incumbrancer until acknowledged; but was good as against
the grantors. (1 *R. S.* 738. *C. & Hill's Notes,* 1269 *et seq.*
2 *Bl.* 309 *and note.* 1 *Barb.* 531.) And, as the deed excepted
and reserved the pews to the owners, I think the trustees were
not purchasers, as against him, within that statute. It is not
clear that a purchase in such case, to avoid the deed, must not
be *bona fide;* and if so, the exception and reservation in
the deed to the trustees was sufficient to put them on inquiry;
particularly as the plaintiff had been in possession under his
deed about two years before the conveyance to them.

Upon the hypothesis that the deed to Voorhees was void, it
is said the reservation of the use of the pews, being to stran-
gers, is also void. (8 *Barb.* 147. *Jackson* v. *Swart,* 20 *John.*
87. *Co. Litt.* 47, a. 4 *Kent,* 468. *Hornbeck* v. *West-
brook,* 9 *John.* 74.) Whether this is not an exception in-
stead of a reservation, within *Doe* v. *Lock,* (2 *A. & E.* 724;

*S. C.* 4 *N. & M.* 807,) and would have passed as a grant, if the trustees had also signed the deed given to them, within *Wickham* v. *Hawker*, (7 *M. & W.* 63,) is not important, in the view I have taken of the deed to Voorhees. The recital of the deed to the trustees, however, may at least be considered evidence against the grantees that there were owners of pews in that church at the time. (9 *Paige*, 659. *C. & Hill's Notes*, 1601, 1235, 1258. 4 *Denio*, 480.)

But the deed to the plaintiff did not convey to him an unqualified estate; a right to the soil upon or over which the pew stood. He took a limited estate; a right to use the pew as a seat in a place of religious worship, as long as the house might stand; subject to the more general right of the corporation in the soil and freehold. (*Shaw* v. *Beveridge*, 3 *Hill*, 26. *Baptist Church* v. *Witherell*, 3 *Paige*, 302. *Freligh* v. *Platt*, 5 *Cowen*, 494. *Heeney* v. *St. Peter's Church*, 2 *Edw. Ch. R.* 608. *Gay* v. *Baker*, 17 *Mass. Rep.* 435. *Perrin* v. *Levitt*, 10 *Id.* 325. 16 *Wend.* 32. *Hill. Ab.* 4.) The plaintiff, from the very subject matter of the conveyance, must be presumed to have taken it subject to all the conditions and limitations incident to such property. If the edifice becomes useless by dilapidation, or is destroyed by fire or any casualty, the right of the pew-holder is gone. And so if, from decay or other injury, the house has to be rebuilt. But if for convenience or from expediency, and not from necessity, the pew is destroyed, the owner has a right to indemnity. Neither the corporation, nor a majority of the congregation, can, for mere purposes of improvement or embellishment, deprive the pew-owner of his property; certainly not without compensation. But if, from the condition of the building or the pew, the latter becomes useless, and it becomes necessary and proper to rebuild the pews instead of repairing them, I think that it can be done without compensation to the pew-holders. And if it may, they cannot complain that another plan or arrangement of the pews is adopted.

Applying these principles to the case before us, the question is, were the defendants justified, under the circumstances, in destroying the pew of the plaintiff? One part of the relief de-

manded is, that the plaintiffs may be restored to the possession of the pew and the place formerly occupied thereby. This cannot be done. The plaintiff cannot be allowed to occupy the pulpit, which is now there. But if the demolition of the pew was unauthorized the owner is entitled to compensation.

Did the defendants show a case of necessity? The carpenter testified that the building needed large repairs. Some of the pews were loose and some of them were drawn away from the wall; and the house was uncomfortable in cold weather; and there was much defect and decay. That the foundation had become defective, and both of the side walls had spread out and were kept together by the weight of the roof; and that had been a subject of apprehension for years; the chimneys were cracked so as to let the smoke and soot through, and rested on decayed planks. That some of the tie beams near one of them were burned a little; the timbers were rotted off, near one corner; the roof leaked, and the floor was shrunk and had to be relaid; and that, in short, it was not true economy to patch up the old building at all. If this was a true statement of its condition, his conclusion was right; probably it would have been true economy to have rebuilt entirely. But it is sufficient, for the defendants, that it was dangerous for the society to worship there, to say nothing of the inconvenience, and that from necessity the defendants were obliged to rebuild it, substantially, all but the walls.

Upon the whole view of the case, we think the judgment should be affirmed.

Judgment affirmed.

· [St. Lawrence General Term, September 5, 1853. Hand, Cady and C. L. Allen, Justices.]