Denio, J.
It is an established doctrine of the common law, that, in consequence of the unity of person between husband and wife, neither the husband nor the wife can grant, the one to the other, an estate in possession, reversion or remainder, to take effect" in possession during the life time of the grantor. (Littleton, § 168; Co. Litt., 3, a, 112, a; Hargrave’s Note, 12, and cases referred to; Bell on Property of Husband and Wife, 470; Firebrass v. Pennant, 2 Wils., 254; Shepard v. Shepard, 7 John. Ch., 57; Voorhees v. The Presbyterian Church of Amsterdam, 17 Barb., 103, and cases cited by Hand, J.; Simmons v. McElwain, 26 Barb., 419; Dempsey v. Tylee, 3 Duer, 73.) There are some exceptions to the rule, not necessary to be adverted to here, but which will be found sufficiently stated in the treatise of Mr. Bell, at the place cited. The rule itself is one of those stubborn mandates of the common law which requires absolute obedience from the courts, whatever they may think of the justice or equity of its application in a par* *330 ticular case. In the case referred to, from Wilson’s Reports, where a provision by a husband for his wife was in question, the judges said they would be glad, if possible, to get over that maxim of law,* that “a husband and wife are one person,” and, therefore, cannot grant lands to one another. “But,” they said, “we are dealing with a fundamental maxim of the common law, and might as well repeal the first section of Littleton, as to determine this grant from the husband immediately to the wife to be good, and where there-is not so much as the shadow of a person intervening.” The reporter adds, that the postea was ordered to be delivered to the defendant, “ reluctante tota curia.” But it is, nevertheless, a very technical principle; and where the design is for a husband to convey to the wife, it may be evaded, in various ways, as by a feoffment to a third person to the use of the wife, or a covenant with a third party to stand seised to the use of the wife (Bell, ut sup.); or, where the wife desires to convey to her husband, the two may join in a conveyance to any one whom they can trust to convey immediately to the husband; and thus the title will be vested in him. (Merriam v. Harsen, 2 Barb. Ch., 232.)
Thus far, there is no serious controversy between the counsel for the respective parties; but the defendant’s counsel insists that, if it be assumed that this conveyance of Mrs.' Wager to her husband would be void at common law, the recent statutes respecting married women have changed the rule, and that now a wife may execute a valid conveyance to her husband, notwithstanding their coverture. In examining these statutes, it is necessary to bear in mind that the wife was formerly subject to other disabilities except the want of power to make a conveyance to her husband. At common law, she could not convey to any one' except by the expensive and dilatory process of fine and recovery; but afterwards, by statute, she was enabled to execute a valid deed of her lands by joining with her husband, and submitting to an examination to show that she acted without coercion; but she could not devise her lands. As to her capacity to accmire the title to property *331 to her own use, the rule was, that all the personal estate which she possessed at her marriage, and all which came to her by any title during coverture, even when received as a compensation for her personal services, vested immediately in her husband, unless it was protected by a settlement to her sole and separate use. If she was the owner of land at the time of •her marriage, or acquired title to it during coverture, the husband immediately became entitled to the rents and profits of it, and was at once seised of a freehold estate in it. Hone of these disabilities attached to the condition of a married man, who was as free to receive the title to property, and to dispose of it, after marriage as before, with the single exception that he could not be the grantee of a deed executed by his wife, or make a grant directly to her. As to the world in general, the estate of marriage did not affect his ability to acquire title to, or to dispose of his property just as he might have done if he had not been married. ' I except, of course, from this remark, the subject of dower, the inchoate right to which the husband could not dispose of. But it was never supposed that the husband’s rights and powers as to property, as affected by the marriage relation, ought to be, or were, susceptible of being increased. The marriage imposed no disability on his part which any one considered a social grievance. On the contrary, the complaint was that his rights were too great, and ought to be diminished. But as to the wife, there came to be a pretty strong sentiment that she was the victim of an oppressive legal system, from which she ought to be relieved. This was a prominent subject of debate in the Constitutional Convention which sat in 1846; and the substance of the subsequent act of 1848 was at one time incorporated into the project of the new Constitution, but it was finally rejected by a close vote. (Debates, by Croswell and Sutton, pp. 55,116, 794, 795, 811-813.) The advocates for a reform as to the legal condition of married women then addressed themselves to the legislature, and the result, in the first instance, was the act of 1848 (ch. 200). It constituted the wife the sole proprietor of all the property of both kinds which she should own when *332 she came to be married, and of all which shotdd devolve upon her by any title daring the coverture. It attempted to divest rights already vested in her husband under the antecedent law, but as to that it was ineffectual. (Westervelt v. Greig, 2 Kern., 202.) But it did not confer upon her the capacity to convey or devise real estate. (Wadhams v. The American Home Missionary Society, 2 Kern., 415.) This was done by the act of 1849 (ch. 375), which authorized a married woman to convey and devise real and personal property, and any interest or estate therein, and the rents, issues and profits thereof, in the same manner and .with the like effect as if she were unmarried. The first mentioned act is entitled, an act for the more effectual protection of the property of married women; and the other is an act to amend the one first mentioned. But independently of this explicit statement of the object of the legislature, it would be quite apparent from the provisions of the acts that the design was, not to confer any additional advantages upon married men, but that it was intended solely for the benefit of the other party to the marriage relation: what is now claimed for the act of 1849 is, that it enables a husband to take a title to realty directly from his wife, contrary to the rule of the common law which has been referred to. We would not expect to find in a law, passed professedly to shield the property of married women from the control of their husbands, a provision making it more easy for the latter to acquire such control. Beyond all doubt the greatest peril to which the separate estate of the wife is exposed, is her disposition to acquiesce in placing the title to it in the hands of her husband. This the common law prevented to a certain extent by rendering her direct conveyance to him void. I am quite confident that the legislature which passed the acts of 1848 and 1849, would not knowingly have repealed that prohibition in the interest of the husband. If it had been intended to interfere with the doctrine at all, it would have been in the interest of the wife. Kow, we know that the common law rule was in the contemplation of the legislature when these statutes were under consideration, for in both of them the power of a feme *333 covert to take property by gift, grant, &c., is limited by the qualifying words, “from any person other than her husband.” Thus it will be perceived that they refused to abrogate the rule where the question was respecting conveyances from the husband to the wife, though the disability of the latter to take property to her own use was the evil which it was intended to remedy. The ability of the husband to take property conveyed to him was not at all under consideration, and he was left to such rights in that respect as the antecedent law gave him.
But it is argued that the power in terms given to a married . woman, by the act of 1849, “ to convey and devise real and personal property,” “ as if she were unmarried,” embraces all manner of conveyances, and necessarily includes any which she might make to her husband. No doubt there was an intention to confer upon the wife the legal capacity of a feme sole, in respect to conveyances of her property, but this does not prove that she can convey to her husband, for no such question could possibly arise in respect to a feme sole, there being no person to whom, in respect to conveyances as made by her, the rule of the common law could apply. By assimilating the case of a wife to that of an unmarried woman, the legislature merely meant to say that she should have the same power as though she were not under the disability of coverture. Taking away that disability, she would have power to make all such conveyances as were not forbidden by special provisions of law; but such general statutes are never understood to overreach particular prohibitions, founded on special reasons of policy or convenience. Corporations cannot, in general, take title to lands by will. The removing of the disabilities of femes covert would not allow them to make a devise to a corporation not authorized to take. It is not the disability of the wife alone which would, by the common law, render void her conveyance to her husband. The husband is as much disabled to take under such a conveyance as she was to convey. Therefore, to render the conveyance valid, the husband’s disability, as well as that of the wife, must be removed; *334 but, as has been remarked, there is no language in these acts, and nothing in their apparent intention, which looks to the removal of any disabilities under which he labored.
Upon the whole, I am of opinion that the acts of 1848 and 1849 have no influence upon the case, and that the principle which renders direct conveyances between husband and wife void, applies to her deed under which the defendant claimed title to the premises in question.
I agree, also, with the Supreme Court, that the defective conveyance cannot be aided by the application of equitable principles. It was wholly without consideration, and in such cases equity does not interfere. (See the cases cited in Shepard v. Shepard, 7 Johns. Ch., 57.)
The judgment of the Supreme Court must be affirmed.
Wright and Smith, Js., dissented.
Judgment affirmed.